[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 07, 2003
THOMAS K. KAHN
CLERK

_____

No. 01-13846

_____

D. C. Docket No. 00-01673-D-N

DEAN EFFARAGE FARROW,

Plaintiff-Appellant,

versus

DR. WEST, (DENTIST),
NURSE SHIPMAN,
DR. CHARLES C. KING, Regional
Director of Correctional
Medical Services, Incorporated,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(February 7, 2003)**

Before CARNES and HULL, Circuit Judges, and HANCOCK*, District Judge.

_____

*Honorable James H. Hancock, United States District Judge for the Northern
District of Alabama, sitting by designation.

HULL, Circuit Judge:

Plaintiff Dean E. Farrow, a state prisoner, appeals the grant of summary judgment in his § 1983 action against defendants Dr. Marvin West, Nurse Linda Shipman, and Dr. Charles King. Farrow asserts that the defendants' eighteen-month delay in medical treatment constituted deliberate indifference to his serious medical need and violated his constitutional rights under the Eighth Amendment. He also contends that defendant Nurse Shipman ordered her staff not to treat him in retaliation for his written complaints about the inadequacy of Dr. West's medical care.

After review and oral argument, we affirm the grant of summary judgment on all claims against Nurse Shipman and Dr. King.[1] We reverse the grant of summary judgment in favor of Dr. West on Farrow's Eighth Amendment claim. In all other respects, we affirm the grant of summary judgment as to Dr. West.

## I. FACTUAL BACKGROUND

---

[1]Although the complaint names Dr. King as a defendant in these proceedings, Farrow did not assert specific allegations against King in his complaint or affidavit. At most, Farrow's claim is that Dr. King, as Regional Director of Correctional Medical Services, Inc., is liable for the conduct of Dr. West. The problem for Farrow is that there is no respondeat superior liability for a § 1983 claim. See Marsh v. Butler County, Ala., 268 F.3d 1014, 1035 (11th Cir. 2001) (en banc). We thus affirm the grant of summary judgment as to defendant King on all claims. In this opinion, we discuss primarily Farrow's claims against Dr. West and Nurse Shipman.

## A.    First Incarceration

In the latter part of 1995, Farrow was an inmate in the Alabama prison system. At that time, defendant Dr. West extracted some of Farrow's teeth. Farrow then was released from prison in the first part of 1996. Before Farrow re-entered prison in Alabama on June 9, 1999, Farrow sought to obtain dentures from a private dentist. However, he was incarcerated before being able to do so.

## B.    Second Incarceration

Farrow had only two lower teeth when he re-entered the Alabama prison system on June 9, 1999. This dental condition made it painful for Farrow to consume hard foods and forced him to improvise a "soft diet," consisting of foods that he could ingest by using only his tongue and the upper part of his mouth. Farrow also had difficulties closing his mouth without having his two lower teeth slice into his upper gums, which caused his gums to bleed. He often experienced severe soreness and swelling in his gums, and his condition also led to weight loss.[2]

---

[2]In conducting a de novo review of the district court's grant of a summary judgment motion, we construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002). For that reason, what we set out in this opinion as the "facts" for summary judgment purposes may not be the actual facts established at trial. See Swint v. City of Wadley, 51 F.3d 988, 992 (11th Cir. 1995); see also note 20 infra.

In prison, Farrow repeatedly requested dental care and dentures. Shortly after entering prison, Farrow was given a physical and a dental examination on June 12, 1999. During his dental examination, he asked the dentist for dentures, but was informed he would have to wait until after he was transferred to another correctional facility. Farrow was then sent to Bullock Correctional Facility where he made an appointment to see a dentist. Before the date of the appointment, Farrow was transferred on July 9, 1999 to Easterling Correctional Facility where defendant Dr. West was a dentist.[3]

### 1. Dr. West Prescribes Dentures for Farrow

On July 29, 1999, Farrow was placed on the denture list at Easterling. The construction process for his dentures began when Farrow met with Dr. West on October 19, 1999. During his visit with Dr. West, Farrow explained his "problem" as follows: (a) "I was having trouble eating, . . . it was extremely painful for me to try to eat hard foods," and "I was eating a self made 'soft diet'" and (b) "[t]he two

---

[3]The record does not reveal the exact nature of the relationship between the defendants and the Alabama Department of Corrections. Although Farrow's brief states that the defendants were private contractors employed by Alabama's prisons to provide medical and dental services, the record is insufficiently developed to verify this assertion. However, the status of the defendants here is immaterial for purposes of § 1983 liability because "a private physician . . . under contract with a state to provide medical care to inmates acts 'under color of state law for purposes of section 1983 when undertaking his duties' to treat an inmate." Carswell v. Bay County, 854 F.2d 454, 456-57 (11th Cir. 1988) (quoting West v. Atkins, 487 U.S. 42, 54 (1988)).

4

(2) teeth I have prevent the closing of my mouth by slicing into my upper gum" and "[f]or a very long time this condition caused the bleeding of my gums, soreness, and swelling." Additionally, Farrow's medical records indicate that Farrow told Dr. West that he lost approximately twenty pounds over the prior three months. This apparently was the three months from when Farrow was transferred to Easterling on July 9 until his October 19, 1999 visit with Dr. West.

During the October visit, Dr. West prescribed for Farrow a complete denture for his upper mouth and a removable partial denture—to fit over Farrow's two remaining teeth—for his lower mouth.[4] Dr. West also began the process for constructing the dentures by taking an impression of Farrow's mouth. According to Dr. West, the four steps in that process are: (1) the impression, (2) wax bite, (3) wax try-in, and (4) delivery of dentures.

## 2. Farrow's November 1999 Visit with Dr. West

Troubles arose, however, on November 4, 1999, during Farrow's next appointment with Dr. West. Dr. West completed the second step by taking a wax bite of Farrow's mouth. At oral argument, defendants' counsel acknowledged that once a wax bite is taken, the wax try-in "should be done soon thereafter."

---

[4]In his affidavit, Dr. West states that "[t]he priority of dental services at Easterling Correctional Facility is as follows: toothaches, filling, and then prosthodontics."

During this November appointment, Farrow told Dr. West that he was very depressed, in pain, and tired of waiting for his false teeth. Farrow said that he had lost his appetite and was losing weight because of his dental problem. He complained to Dr. West that he did not know of any dentist in the "free world" who took longer than thirty days to provide dentures. This statement angered Dr. West, who asked Farrow why he did not obtain dentures while not imprisoned.

Also during Farrow's November visit, Dr. West did observe that Farrow was losing too much weight and recommended that Farrow have another physical examination. However, a nurse informed Farrow that it would take three weeks to a month to get a physical, so Farrow told Dr. West that he just needed false teeth and not another physical examination. According to Farrow, Dr. West responded that he did not care what Farrow needed and was "sick of being bother[ed] with [him]." Dr. West told Farrow to sign a waiver form acknowledging his refusal of the physical examination and then asked the nurse to "get me another inmate in here!"[5] After signing the waiver, Farrow asked Dr. West how long he would have to wait for his dentures. Dr. West responded by telling the security guard to expel Farrow from the infirmary.

---

[5]While signing the waiver, the dental assistant allegedly told Farrow that she believed inmates and their families should pay for inmates' medical bills, not taxpayers.

### 3. No Dentures from November 1999 to November 2000

For several months after the November 1999 visit, Dr. West refused to meet with Farrow. It was July 2000 before Farrow saw Dr. West again. During that nine-month period from November 1999 to July 2000, Farrow did not receive any dental care.

In July 2000, Farrow had another physical examination. During his examination, Farrow complained about his dental condition and again requested dental services. He was referred to and had an appointment with Dr. West on July 12, 2000. At that appointment, Dr. West told Farrow that "he'd sent the cast off" and would send for Farrow when his dentures arrived. The medical records indicate that Farrow was scheduled to return, at an unspecified time, for a wax try-in. After this July 2000 visit, Farrow repeatedly asked Dr. West and his assistant about his dentures. They told him that his dentures were not ready and that they would send for him when the dentures arrived.

In October 2000, Farrow's gums bled again after he attempted to eat cornbread. On two occasions that October, Farrow submitted written complaints requesting dental care and seeking treatment for other ailments. On October 15, Farrow stated that he needed "to see the dentist" and needed "medicine for athlete['s] foot." Two days later, on October 17, Farrow wrote that he was

"absolutely in need of dentures" and complained that "this system of treatment is inadequate and in violation of the Alabama Constitution . . . and the 14th Amendment and 8th Amendment of the United States Constitution." The nurses on sick call told him that they were not responsible for dental work and did not treat him.[6] Farrow then used a salt and warm water remedy for his gums, which healed for a duration.

On October 31, 2000, nearly <u>one</u> year after the wax bite was taken, Farrow returned to Dr. West for a wax try-in, the third step. During that appointment, Dr. West told Farrow to expect a call from him soon about his dentures.

In November 2000, Farrow's upper gums bled again because his two teeth cut into them each time he sneezed. Farrow sought treatment for his mouth, as well as for a cold and his athlete's foot. He filled out a third written complaint on November 22, stating that he would like to see a dentist and needed treatment for his sinuses and athlete's foot. The nurse on duty informed him that she could not give him any medicine for his cold or his athlete's foot because defendant Nurse Shipman, a supervisor of the nursing staff at the Easterling Correctional Facility, had told her not to do so. The nurse told Farrow that he would have to purchase

---

[6]In October 2000, Farrow also complained about his athlete's foot to the nurses. The nurses informed him that he would have to buy medicine from the infirmary to treat his athlete's foot.

medicine from the infirmary.[7]  Farrow asserts he was denied treatment, on Nurse

Shipman's orders, because of his written complaints.[8]

### 4.    Farrow Receives Dentures in January 2001

As of December 2000, Farrow had not received his dentures.  Therefore, on

December 4, 2000, he pro se filed this § 1983 action against the defendants

seeking, inter alia, injunctive relief from the federal court ordering the defendants

to complete and deliver his dentures.[9]  On January 2, 2001, nearly fifteen months

after Dr. West prescribed dentures as medically necessary for Farrow, but less than

one month after he filed suit, Farrow's dentures were delivered.

## II.  PROCEDURAL HISTORY

Farrow's pro se complaint alleged that the defendants were deliberately

indifferent to his serious medical need and that they, Nurse Shipman in particular,

retaliated against him for submitting written complaints about the inadequacy of

---

[7]In October and November 2000, Farrow had no money in his prison account.  One of the nurses allegedly stated that "[t]he taxpayers should not have to pay for [Farrow's] medical bills" and told Farrow that he should "[g]et his folks to pay [for his dentures] or do without."

[8]Nurse Shipman submitted an affidavit stating that she never received, and had no knowledge of, Farrow's written complaints.  However, in this summary judgment posture, we must construe the evidence in the light most favorable to Farrow.  See note 2 supra.

[9]Although Farrow proceeded pro se in the district court, Farrow was appointed counsel on appeal.

the dental care at Easterling Correctional Facility. The magistrate judge then ordered the defendants to review the subject matter of the complaint and file a written report containing the sworn statements of all persons connected with Farrow's § 1983 action.

Accordingly, the defendants filed their special report and submitted Farrow's medical records and the affidavits of Dr. West and Nurse Shipman. In their report, the defendants raised several affirmative defenses, including qualified immunity, and argued that they were entitled to summary judgment. Farrow filed a response to the defendants' report, including an affidavit.

The magistrate judge construed the defendants' special report as a motion for summary judgment and recommended to the district court that the motion be granted. Although expressing concern about the defendants' conduct towards Farrow, the magistrate judge concluded that the defendants' conduct did not constitute an Eighth Amendment violation. Adopting the magistrate judge's report, the district court granted summary judgment in favor of all defendants. Farrow timely appealed.[10]

---

[10]In his complaint, Farrow also alleges that the defendants violated his rights by failing to review grievances he submitted in October and November 2000 about the quality of dental care he was receiving. Adopting the magistrate judge's recommendation, the district court granted summary judgment for the defendants on this claim. In his briefs on appeal, Farrow makes a passing reference to the district court's dismissal of this claim but fails to argue on the merits as to this issue. Accordingly, the issue is deemed waived. See Kelliher v. Veneman, 313

# III.  DISCUSSION

We outline what Farrow must show to establish an Eighth Amendment violation.  Then we explain why this record, under Farrow's version of the events, creates a jury issue as to whether defendant Dr. West violated Farrow's constitutional rights under the Eighth Amendment.[11]  We then point out why Nurse Shipman is entitled to summary judgment in her favor on the Eighth Amendment claim against her.  Finally, we discuss why the district court properly granted summary judgment against Farrow on his retaliation claim.

## A.     Eighth Amendment Violations

Although the United States Constitution does not require comfortable prisons, neither does it permit inhumane ones.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment governs "the treatment a prisoner receives in

---

F.3d 1270, 1274 n.3 (11th Cir. 2002) (stating that because plaintiff "only mentioned his EEOC retaliation claim in the summary of the argument in his initial brief," and "made no arguments on the merits as to this issue, the issue is deemed waived"); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (stating that although plaintiffs' cross-appeal the district court's dismissal of their amendment to the complaint in their initial brief on appeal, the "issue is deemed waived" because plaintiffs "elaborate[] no arguments on the merits as to this issue in [their] initial or reply brief").

[11]This Court reviews de novo a district court's grant of summary judgment, "applying the same legal standards as the district court."  Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).  Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). However, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319 (1986). "After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Ingraham v. Wright, 430 U.S. 651, 670 (1977) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citations omitted)).

In Estelle v. Gamble, the Supreme Court held that a prison official's "deliberate indifference to [the] serious medical needs of [a] prisoner[] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (quotation marks and citation omitted); see Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted); see Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 105-06.

12

To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995). First, a plaintiff must set forth evidence of an objectively serious medical need. Taylor, 221 F.3d at 1258; Adams, 61 F.3d at 1543. Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need. Farmer, 511 U.S. at 834; McElligott, 182 F.3d at 1254; Campbell, 169 F.3d at 1363. We now examine whether Farrow's evidence showed a serious medical need and, if so, whether there was deliberate indifference to that need.

**B.     Serious Medical Need**

In our circuit, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted).[12]  In either of these situations, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" Taylor, 221 F.3d at 1258 (alteration in original) (quoting Farmer, 511 U.S.

---

[12]In Hope v. Pelzer, 122 S. Ct. 2508 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners. Hope, 122 S. Ct. at 2515 n.9.

at 834).[13] Our precedent recognizes a range of medical needs that are sufficiently serious to constitute "serious medical needs" for purposes of the Eighth Amendment and some medical needs that are not.[14] In certain circumstances, the need for dental care combined with the effects of not receiving it may give rise to a sufficiently serious medical need to show objectively a substantial risk of serious harm. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1988); Ramos v.

---

[13]In Taylor, we stated: "To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively 'serious medical need[],' Estelle, 429 U.S. at 104, 97 S. Ct. at 291, one that, if left unattended, 'pos[es] a substantial risk of serious harm,' Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). . . ." Taylor, 221 F.3d at 1258 (alterations in original).

[14]Compare Adams v. Poag, 61 F.3d 1537, 1539-41, 1543 (11th Cir. 1995) (asthma, with continual breathing problems and with intermittent wheezing, coughing, and hyperventilating, can constitute a serious medical need), and Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (painful broken foot can be serious medical need), and Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989) (evidence showing that plaintiff's leg collapsed under him, was deteriorating, caused pain when moved, and that he was virtually unable to walk, supported jury's conclusion that plaintiff had serious medical need), and Aldridge v. Montgomery, 753 F.2d 970, 972-73 (11th Cir. 1985) (one-and-a-half-inch cut over detainee's eye bleeding for two and a half hours was a serious medical need), with Shabazz v. Barnauskas, 790 F.2d 1536, 1538 (11th Cir. 1986) (inmate's "pseudofolliculitis barbae" or "shaving bumps," even if shaving required by prison officials when physician ordered otherwise, "does not rise to the level of the cruel and unusual punishment forbidden by the Eighth Amendment"), and Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (inmate's high blood pressure presented no "true danger" or "serious threat" to his health; he also had full range of motion in his shoulder despite continuing pain from a three-year old injury).

Lamm, 639 F.2d 559, 576 (10th Cir. 1980).[15] The evidence, under Farrow's

version of events, showed such a serious medical need.

Dr. West acknowledged Farrow's medical need for dentures during Farrow's

first visit with him on October 19, 1999. During that visit, Farrow complained to

Dr. West about the pain and weight loss he was experiencing due to his dental

condition.[16] The pain and weight loss from having virtually no teeth constituted a

medical need warranting the treatment of dentures. Indeed, upon hearing Farrow's

complaints and examining Farrow's mouth, Dr. West diagnosed Farrow's dental

condition as mandating immediate treatment and expressly prescribed dentures for

Farrow. At that time, Dr. West also immediately began the denture construction

---

[15]In Hunt v. Dental Dep't, 865 F.2d 198 (9th Cir. 1988), the plaintiff alleged that he was suffering serious medical needs from the loss of dentures. Id. at 200. Specifically, the plaintiff "alleged that the prison officials were aware of his bleeding gums, breaking teeth and his inability to eat properly." Id. The Ninth Circuit implicitly determined that these allegations established a serious medical need in reaching its conclusion that "[plaintiff's] allegations are sufficient to state a claim of deliberate medical indifference under section 1983" given that plaintiff alleged that defendant prison officials knew of plaintiff's condition yet "failed to take any action to relieve his pain or to prescribe a soft food diet until new dentures could be fitted." Id.

[16]The defendants argue that Farrow's medical records show that he did not lose weight due to his dental condition. For instance, the defendants claim that Farrow weighed 212 pounds on October 19, 1999, 207 pounds on November 4, 1999, and 216 pounds on November 16, 1999. However, we are required to view the record in the light most favorable to Farrow. Thus, we accept as true the medical record evidence indicating that Farrow had lost twenty pounds from July 1999 to October 1999, thus placing his weight in July 1999 at approximately 232 pounds and showing he had been losing weight.

15

process by taking an impression of Farrow's gums and two remaining teeth on October 19, 1999.

Moreover, the record is replete with instances showing that Farrow's dental and medical condition was endured for at least fifteen months and became serious. During Farrow's November 1999 visit, Dr. West recognized that Farrow had lost a significant amount of weight and advised Farrow that he needed a physical examination. On repeated occasions in 1999 and 2000, Farrow suffered from pain and bleeding gums because of his condition and lack of dentures. Additionally, the record indicates that Farrow had to modify his diet, without the supervision of a doctor or a dentist, and eat only soft foods due to his lack of teeth and dentures.

We are not saying that merely having few or no teeth and a definite need for dentures per se constitutes a serious medical need in each case. But in Farrow's case, the evidence shows pain, continual bleeding and swollen gums, two remaining teeth slicing into gums, weight loss, and such continuing medical problems, establishing a serious medical need.

The defendants argue that Farrow has not demonstrated a serious medical need because Farrow has failed to show that the long delay in completing and delivering Farrow's dentures resulted in a life-long handicap or permanent loss. The defendants base this argument on Hill, but misinterpret that decision. In Hill, the defendant Swain, a layperson, knew the inmate had been to the hospital the

previous day and received prescribed medication for his diagnosed gastrointestinal condition. Hill, 40 F.3d at 1187. The next day, the inmate continued to complain of stomach cramps, and Swain learned that the inmate discovered blood on his underwear. Id. at 1180, 1187. Swain recognized the need for medical care, but delayed the inmate from being transported until four hours later in order for Swain to oversee the serving of dinner. Id. at 1180, 1187. In Hill, the question was not whether the inmate's medical need was serious, but instead was whether Swain's four-hour delay in providing medical care constituted a denial of medical care in violation of the Eighth Amendment. Id. at 1187.[17] In answering this question, we stated in Hill that "a constitutional claim for immediate or emergency attention" may arise when the medical need "involve[s] life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem," id., or "the delay results in an inmate's suffering a life-long handicap or permanent loss." Id. at 1188 (quotation marks omitted). Defendants' reliance on Hill's language about "life-long handicap or permanent handicap" is misplaced because Farrow does not assert that his medical need required

---

[17]We determined in Hill that Swain's delay in securing medical care for "[f]our hours [was] not an excessive delay . . . for [what was] a reasonably apparent, nonemergency medical condition." See Hill, 40 F.3d at 1190.

17

immediate or emergency attention.[18]  Because Farrow has shown a serious medical need, we turn to deliberate indifference.

## C.    Deliberate Indifference

In <u>Estelle</u>, the Supreme Court established that "deliberate indifference" entails more than mere negligence.  <u>Estelle</u>, 429 U.S. at 106; <u>Farmer</u>, 511 U.S. at 835.  The Supreme Court clarified the "deliberate indifference" standard in <u>Farmer</u> by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official <u>knows of</u> and <u>disregards an excessive risk to inmate health or safety</u>; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer</u>, 511 U.S. at 837 (emphasis added).  In interpreting <u>Farmer</u> and <u>Estelle</u>, this Court explained in <u>McElligott</u> that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

---

[18]The defendants also argue that had Farrow's medical need really been serious, Farrow would have obtained dentures while he was out of prison, sometime between 1995 and 1999.  However, the defendants overlook the evidence indicating Farrow did visit a private dentist in an attempt to obtain dentures in 1999 before returning to prison.  In any event, while this argument may have credibility value, it has little relevance to the issue before this Court.

This Court has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence." For instance, we have stated that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir. 1997). Alternatively, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott, 182 F.3d at 1255. For example, a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference. Hill, 40 F.3d at 1190 n.26; H.C. by Hewett v. Jarrad, 786 F.2d 1080, 1086 (11th Cir. 1986) (citing Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985).

Again, Farrow has pointed to sufficient evidence to avoid summary judgment at this juncture. A jury accepting Farrow's account of his encounters with Dr. West and of Dr. West's conduct would be entitled to find that Dr. West was deliberately indifferent to Farrow's serious medicals need. Farrow repeatedly told Dr. West about his pain, weight loss, bleeding gums, and soft diet, and thus Dr. West knew of a serious risk of harm to Farrow. During his October 19, 1999

19

visit, Farrow told Dr. West that he had only two lower teeth and no upper teeth. Farrow explained to Dr. West that, because of this condition, he was suffering from painful and bleeding gums and weight loss and that he had improvised a diet consisting only of soft foods. After listening to these complaints and conducting an examination of Farrow's mouth, Dr. West recognized Farrow's condition as constituting a serious medical need when he diagnosed Farrow's condition as mandating treatment and prescribed dentures for Farrow. Furthermore, on November 4, 1999, Dr. West knew that Farrow's weight loss was a problem and instructed Farrow to see a doctor for a physical examination. Dr. West thus had actual knowledge of Farrow's serious medical condition and a substantial risk of serious harm that could result from this condition. He was aware that Farrow, without dentures, likely would continue to suffer from pain and bleeding and swollen gums and that Farrow could experience other serious health problems, such as weight loss and malnutrition.

There was also sufficient evidence in this record to permit a jury to conclude that Dr. West, according to Farrow, disregarded the substantial risk of serious harm to Farrow. Despite his knowledge that Farrow would continue to experience difficulties without dentures, Dr. West did not complete and deliver Farrow's dentures from October 19, 1999 until January 2, 2001, almost fifteen months after Dr. West began the denture construction process. Equally as striking, after

20

completing step two in the denture construction process—the wax bite—in November 1999, Dr. West provided no dental care to Farrow until July 2000 and did not complete the third step—the wax try-in—until October 31, 2000, almost one year after taking the wax bite. This delay occurred despite the acknowledgment by defendants' counsel at oral argument that after a wax bite is taken, a wax try-in "should be done soon thereafter."

This substantial and inordinate delay in treatment raises a jury question as to Dr. West's deliberate indifference towards Farrow's serious medical need. Whether this delay in treatment was tolerable "depends on the nature of the medical need and the reason for the delay." Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994); McElligott, 182 F.3d at 1255; see also Adams, 61 F.3d at 1544 ("Some delay . . . may be tolerable depending on the nature of the medical need and the reason for the delay."). For instance, we previously have recognized that delays of days or even hours in delivering necessary treatment may constitute deliberate indifference in some circumstances. See, e.g., Harris, 21 F.3d at 394; Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990). Of course, in these prior cases, the medical condition is so grave, and requires such immediate medical attention, that "[a] few hours' delay in receiving medical care for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference." Harris, 21 F.3d at 394; see, e.g., Brown, 894 F.2d at 1538 (approximate six-hour

delay in medical treatment for "a serious and painful broken foot is sufficient to state a constitutional claim").  Here, the facts do not suggest that Farrow's condition was so grave that some considerable delay in dental treatment would have authorized a finding of deliberate indifference.

However, "[d]elayed treatment for injuries that are of a lesser degree . . . may also give rise to constitutional claims."  Harris, 21 F.3d at 394.  While Farrow's condition did not require immediate attention, his claim survives summary judgment given his recognized need for denture treatment, the nature of his continuing problems, the sheer length of the delay involved, and the lack of any reasonable explanation for the inordinate delay in this case.  Thus far, the defendants have offered no reasonable explanation for the fifteen-month delay,[19] nor have they explained why Dr. West did not perform the third step in the denture construction process until nearly one year had passed after completing the wax bite.[20]  See McElligott, 182 F.3d at 1258 n.6 ("Although [the plaintiff's] needs

----

[19]Farrow asserts that the defendants were deliberately indifferent to his medical need for eighteen months because Farrow was placed on the denture list on July 29, 1999 and did not receive dentures until January 2, 2001.  However, the evidence indicates that Dr. West was not subjectively aware of Farrow's medical need until October 19, 1999, the date that Dr. West prescribed dentures for Farrow.

[20]Of course, the actual facts may differ significantly from Farrow's account of events.  Indeed, the defendants suggest that Farrow seldom complained about his dental problems and that therefore they were subjectively unaware of the seriousness of his condition.  In particular, the defendants assert that Farrow's medical records demonstrate that he failed to make specific complaints about

were not so serious that a delay of a day or so would have been constitutionally intolerable, the week long delays he endured, a jury could conclude, were the product of deliberate indifference.").

Indeed, drawing all reasonable inferences in Farrow's favor, the evidence would support a jury finding that Dr. West purposefully refused to treat or see Farrow for a considerable period of time after Dr. West had an argument with Farrow during the November 1999 visit and told Farrow that he was "sick of being bother[ed] with [him]." During this long delay in treatment, however, Farrow was permitted to suffer from pain, bleeding and swollen gums and periodic weight loss, and the defendants have offered no reasonable medical reason for the fifteen-month delay. Thus, we conclude an issue of fact is presented as to whether Dr. West's conduct displayed deliberate indifference to Farrow's serious medical need.

---

suffering from painful and bleeding gums. This argument is misplaced, however, because in our de novo review of a district court's disposition of a summary judgment motion, we are required to view all facts and draw reasonable inferences in Farrow's favor. Thus, we are required to accept as true, for instance, Farrow's affidavit that (1) he told West, during his October 19, 1999 visit, he was suffering from pain and bleeding gums, (2) Dr. West commented on his weight loss in November 1999, and (3) Farrow again emphasized his need for dentures in his July and October 2000 visits. In any event, the defendants do not dispute that Dr. West diagnosed Farrow's condition on October 19, 1999 as requiring dentures, and they offer no reason to explain the fifteen-month delay in completing and delivering his dentures.

**D.  Nurse Shipman**

Farrow appears to suggest that Nurse Shipman similarly displayed deliberate indifference towards his serious medical need.  Specifically, Farrow appears to allege that Nurse Shipman ordered her staff not to provide dental care to him despite her knowledge that he had a serious medical need.  However, Farrow has not submitted any evidence showing that Nurse Shipman herself subjectively was aware of a serious risk of harm to Farrow.  Consequently, the district court's grant of summary judgment to Nurse Shipman on this claim was not in error.

## IV.  RETALIATION

The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech.  Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989).  "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Id. at 1242.  Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech."  Id.  A prisoner can establish retaliation by demonstrating that the prison official's actions were "the result of his having filed a grievance concerning the conditions of his imprisonment."  Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989).

Farrow asserts that Nurse Shipman ordered her staff not to treat Farrow because he had submitted written complaints about the inadequacy of Dr. West's

24

dental care. In particular, Farrow complains that the nurses refused him dental care and told him that he would have to buy medicine from the infirmary using money from his account. However, Nurse Shipman's affidavit states that she never received nor had knowledge of Farrow's complaints, and Farrow has offered no evidence to rebut her evidence.[21] Thus, summary judgment was proper on Farrow's retaliation claim because Farrow has not established a causal relationship between his complaints and the alleged denial of treatment by Nurse Shipman and her nursing staff. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991) ("If

---

[21]In the district court, Farrow did submit a "Motion for Order of Identification" seeking the names of individuals responsible for the filing and review of medical complaints. Presumably, Farrow made this request, in part, to obtain materials that may have rebutted Nurse Shipman's statement that she had no knowledge of Farrow's complaints. The magistrate judge denied Farrow's motion, and Farrow did not appeal this determination before the district court. In his reply brief on appeal, Farrow argues that the magistrate judge's ruling was in error.

This Court generally does not address arguments raised for the first time in a reply brief. See, e.g., Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1296 n.19 (11th Cir. 2001). In any event, Farrow waived this issue in the district court by not objecting to the magistrate judge's ruling with the district court, as he was required to do under Rule 72(a) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 72(a). A party failing to appeal a magistrate judge's order in a nondispositive matter to the district court may not raise an objection to it on appeal to a circuit court. See Stemler v. City of Florence, 126 F.3d 856, 866 n.9 (6th Cir. 1997) (failure to challenge magistrate judge's discovery order to district court constitutes waiver of claim on appeal); Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1173-74 (9th Cir. 1996) (pro se litigant forfeited right to appellate review of magistrate judge's nondispositive order by not appealing that order to the district court); Pagano v. Frank, 983 F.2d 343, 346 (1st Cir. 1993) ("[W]hen . . . a litigant could have tested a magistrate's ruling by bringing it before the district judge, but failed to do so within the allotted ten-day period, he cannot later leapfrog the trial court and appeal the ruling directly to the court of appeals."); see also ICA Const. Corp. v. Reich, 60 F.3d 1495, 1499 n.10 (11th Cir. 1995) ("Because the record indicates that Appellants failed to file objections to [magistrate judge's] order within ten days, any such objection was likely waived.").

the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence.").

## V. CONCLUSION

For the reasons stated above, we reverse and vacate the entry of summary judgment on Farrow's Eighth Amendment claim against Dr. West and remand this case to the district court for further proceedings consistent with this opinion.[22]  As to all other claims, we affirm the grant of summary judgment as to Dr. West.  We also affirm the grant of summary judgment as to Dr. King and Nurse Shipman on all claims.

---

[22]The defendants also asserted that they were entitled to qualified immunity from liability.  The Supreme Court has set forth a two-part test for qualified immunity analysis.  "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 122 S. Ct. 2508, 2513 (2002).  "If a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

In this case, we decide only that there exists a triable issue of fact regarding whether Dr. West's conduct violates the Eighth Amendment.  In their special report, the defendants argued only that there was no constitutional violation, but failed to contend that their conduct, if unconstitutional, did not violate clearly established law.  Accordingly, the district court addressed only whether the defendants' conduct violated Farrow's constitutional rights.  Furthermore, the defendants did not argue in their brief to us that if there was a constitutional violation, it was not of clearly established law.  Accordingly, we address only the issue they raised in the district court and before us, and we hold that defendants are not entitled to qualified immunity on the theory that there was no constitutional violation.

**AFFIRMED IN PART; VACATED AND REVERSED IN PART.**