**Edward Eliot KRAMER, Plaintiff,**

v.

**GWINNETT COUNTY, GEORGIA; R.L. "Butch" Conway, Prison Health Services, Inc.; and Dwana Gebhardt, Defendants.**

**No. CIV.1:02–CV–2124–ODE.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 5, 2004.

John J. Lieb, Oakwood, GA, for Plaintiff.

Melinda K. Wells, Karen Gilpin Thomas, Kristina Hammer Blum, Gwinnett County Law Department, Lawrenceville, GA, Phillip Edward Friduss, Brandi Michelle Kellis, Hall, Booth Smith & Slover, Atlanta, GA, for Gwinnett County, and R.L. Butch Conway, and Prison Health, Services and Dwana Gephart, for Defendants.

## ORDER

EVANS, District Judge.

This civil matter, alleging deprivation of Plaintiff's constitutional rights in violation of 42 U.S.C. § 1983, is presently before the Court on Plaintiff's opposed motions for oral argument on Defendants' motions for summary judgment [## 58, 59], Defendants Gwinnett County and Conway's opposed motion to strike [# 55], Defendants Prison Health Services and Gebhardt's opposed motion to strike [# 65], Defendant Conway's opposed motion for leave to file supplemental brief [# 73], Defendants Prison Health Services and Gebhardt's opposed motion for summary judgment [# 43] and Defendants Gwinnett County and Conway's opposed motion for summary judgment [# 46].

### I. Background

Defendant Prison Health Services, Inc. ("PHS") contracts with Defendant Gwinnett County, Georgia to provide medical care to inmates housed at the Gwinnett County Detention Center ("GCDC"). Defendant Gebhardt is PHS's on-site Health Services Administrator at the GCDC and is responsible for coordination of medical services provided. Defendant Conway is the Sheriff of Gwinnett County, Georgia, and is sued in his official capacity.

Plaintiff was an inmate at the GCDC from August 25, 2000 until November 6, 2000, and then again from November 16, 2000 until January 24, 2001. On July 31, 2002, Plaintiff brought suit under 42 U.S.C. § 1983 and 18 U.S.C. § 242 against the current Defendants and five subsequently dismissed individuals to redress certain wrongs which were alleged to have occurred during Plaintiff's incarceration at the GCDC. On August 2, 2002, Plaintiff filed an amended complaint that, at seventy-four pages and 209 paragraphs, was substantially similar to the original complaint filed on July 31. In response to two defense motions for a more definite statement, this Court found Plaintiff's amended complaint stated claims for violation of at least three constitutional rights under Section 1983 and attempted to state a claim for assault and battery under a criminal statute, 18 U.S.C. § 242. (Order, October 3, 2002 at 4.)

By stipulation of the parties, the five aforementioned individual defendants were dismissed pursuant to Fed.R.Civ.P. 41(a)(1)(ii) on January 6, 2003. Subsequent to this dismissal, the two pending defense motions for summary judgment were filed seeking dismissal of all of Plaintiff's claims. Plaintiff's responses to Defendants' motions for summary judgment were for the most part wholly unresponsive to Defendants' arguments, and contained only one heading labeled "deliberate indifference," which is a reference to Plaintiff's Section 1983 claim for deliberate in-

difference to Plaintiff's serious medical needs. Although Plaintiff's responses make passing reference to an Eighth Amendment cruel and unusual punishment claim, Plaintiff fails to tie said claim to any Defendant currently before the Court.[1]

Local Rule 7.1B provides that failure to file a response to a party's motion "shall indicate that there is no opposition to the motion." N.D. Ga. R. 7.1B. Rule 7.1B requires not just that a party generally "respond" to a motion but mandates that a party respond to each portion of a motion. *See Witter v. Delta Airlines, Inc.*, 966 F.Supp. 1193, 1200 (N.D.Ga.1997). Consequently, a party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed. *Welch v. Delta Air Lines, Inc.*, 978 F.Supp. 1133, 1148 (N.D.Ga.1997) ("[U]nder Local Court Rule 7.1 of the United States District Court for the Northern District of Georgia, factual and legal claims to which there is no response should be treated as unopposed."). Having failed to respond to many of Defendants' arguments and having defended only his Section 1983 claim for deliberate indifference to a serious medical need, Plaintiff is found to have abandoned all other asserted claims. Accordingly, the only claim remaining on summary judgment is Plaintiff's claim for constitutionally inadequate medical care.[2]

## II. Facts

For the most part, the Court draws the facts from Defendants' statements of undisputed material facts. In accordance with Local Rule 56.1B(1) both sets of Defendants, with their motions for summary judgment, filed a separate, numbered statement of undisputed material facts. Local Rule 56.1B(2) provides,

> The respondent to a motion for summary judgment shall attach to the response a *separate* and concise statement of material facts, *numbered separately*, to which the respondent contends there exists a genuine issue to be tried. *Response should be made to each of the movant's numbered material facts.* All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement *shall* be deemed to have been admitted.

N.D. Ga. R. 56B(2) (emphasis added). Plaintiff-respondent failed to comply with this rule, and instead, filed a pleading which stated, "The facts in this case are voluminous. Plaintiff incorporates the exhaustive facts alleged in his Complaint and in the Facts portion of his brief as if fully stated herein." (Plaintiff's Statement of Theory of Recovery and Material Facts As To Which There Are Genuine Issues at 2.) Thus, Plaintiff has failed to oppose any of Defendants' material facts, and all of Defendants' numbered facts are deemed admitted. *See Jackson v. City of Stone Mountain*, 232 F.Supp.2d 1337, 1341 (N.D.Ga.2002). Nevertheless, the Court must still view all evidence and inferences of fact in the light most favorable to Plaintiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Accordingly, the Court has referenced the facts section of Plaintiff's re-

---

1. Furthermore, the Eighth Amendment is inapplicable to pretrial detainees such as Plaintiff. *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir.1985). Any claim related to Plaintiff's treatment would have to be brought under Fourteenth Amendment Due Process. *Id.*

2. This finding is in keeping with Plaintiff's counsel's statement during the July 17, 2003 motion hearing that the only issue in this action is whether the medical treatment provided to Plaintiff while incarcerated constituted deliberate indifference to a serious medical need.

sponse in an effort to determine the contentions put forth by Plaintiff.

The facts as are relevant to Plaintiff's claim of deliberate indifference are as follows. Plaintiff was arrested and booked into the GCDC on August 25, 2000, on two counts of aggravated child molestation. Upon being booked, Plaintiff was medically screened by a PHS nurse. During said screening Plaintiff indicated that he suffered from various medical problems including psoriasis, psoriatic arthritis, poor circulation, sleep apnea and asthma. Plaintiff also informed the nurse that he utilized prednisone (a steroid), aspirin, and a topical steroidal cream on a daily basis. Plaintiff has suffered from psoriasis and related conditions for all of his adult life. With treatment, Plaintiff has historically been able to manage these conditions into remission. Prior to his booking into the GCDC, however, Plaintiff had experienced a flare-up of his psoriasis.

On the day following his booking, August 26, 2003, Plaintiff filed a medical request with the GCDC noting that his psoriasis lesions had begun to bleed and that he was in need of his prednisone to prevent arthritic swelling in his joints. That same day, Plaintiff's prednisone medication was delivered to the jail, and administration of the medication began. On August 29, Plaintiff's steroidal cream was delivered; Plaintiff was allowed to keep this medicine in his cell for use as needed.

From early-September until November 6, 2003, Plaintiff's condition steadily worsened with continued outbreaks of psoriasis, bleeding lesions, and joint swelling. During this period, Plaintiff was seen by PHS physicians on five occasions and attended to by PHS nurses numerous times. In an attempt to better monitor his condition, Plaintiff was placed in the GCDC medical unit for five days to allow for constant observation by the PHS nursing staff. At the recommendation of a PHS physician,

Plaintiff was taken to an off-site dermatologist where he was prescribed another steroidal ointment and other additional medication. In a further effort to assuage Plaintiff's worsening condition, Plaintiff was twice transported to his own rheumatologist who prescribed another treatment option and ordered an MRI to evaluate neck pain Plaintiff obtained through a fall at the jail. In accordance with his rheumatologist's orders, Plaintiff was taken to Emory Eastside Medical Center for an MRI.

Plaintiff had originally been denied bond, but based on his continued medical ailments, a second bond hearing was held before Gwinnett Superior Court Judge Debra Turner on November 6, 2000. At the hearing, the Court received testimony from Plaintiff's rheumatologist and Defendant Gebhardt. Plaintiff's doctor noted the condition of Plaintiff's psoriasis had deteriorated since his incarceration which in turn was causing an increase in Plaintiff's psoriatic arthritis and had resulted in a new lesion that was capable of causing severe spinal injury. It was also revealed that PHS inadvertently allowed Plaintiff to miss a follow-up appointment with the off-site dermatologist, and PHS had yet to perform blood work ordered three weeks prior to the hearing. These findings and the GCDC's lack of bathtubs, warm baths represent an important part of the treatment of psoriasis, led the Judge to conclude that it was in Plaintiff's best interest to return home to care for himself. Accordingly, Plaintiff was granted bond.

Plaintiff's at-home care, however, did not last for an extended period. On November 16, 2000, Plaintiff was again booked in the GCDC for allegedly violating the provisions of his bond. The treatments Plaintiff had previously been receiving were resumed within a day.

On November 27, 2000, Plaintiff was seen by a PHS physician. On the following day, Plaintiff was seen by the off-site dermatologist who had treated Plaintiff during his prior period of incarceration. The dermatologist recommended tri-weekly PUVA light treatments with Plaintiff's regular dermatologist in an effort to combat Plaintiff's psoriasis. Said treatments began on December 6, 2000 and continued every Monday, Wednesday, and Friday for the balance of Plaintiff's incarceration.

On December 1, 2000, Plaintiff's neck was allegedly injured in a security drill at the GCDC.[3] In response to his complaints, after noting no signs of external injury, PHS nurses treated Plaintiff with Tylenol and Motrin. A follow-up examination by a PHS physician led to a ten-day course of Motrin combined with a muscle relaxer.

In mid-December 2000, on the basis of Plaintiff's complaints that PHS allowed him to miss around twenty percent of his outside medical appointments and his general perception of inadequate medical care, Plaintiff's criminal attorneys requested that Judge Turner allow Plaintiff to schedule his own medical treatment. On December 18, 2000, Plaintiff's request was granted. The judge's order left PHS with little involvement in Plaintiff's medical care beyond dispensation of his medications.

On December 27, 2000, Plaintiff filled out an inmate request complaining that he was not receiving his breakfast at the appropriate time for his medication schedule. Defendant Gebhardt responded in writing promising she would meet with GCDC administration on January 2, 2001. At the January 2 meeting Gebhardt was assured the problem would be resolved. On January 7, Gebhardt prepared a memorandum to GCDC staff outlining when Plaintiff was to be fed in accordance with the requirements of his PUVA light treatments.

On January 24, 2001, Plaintiff was released from the GCDC to go on house arrest.

## III. *Motions Relating to Summary Judgment*

Subsequent to the filing of Defendants' motions for summary judgment, Plaintiff moved for oral argument on both motions for summary judgment, Defendants moved to strike both of Plaintiff's responses and specified exhibits attached thereto, and Defendant Conway moved for leave to file a supplemental brief. Before turning to the question of summary judgment, the Court will address these related motions.

### A. *Plaintiff's Motions for Oral Argument*

Plaintiff moved for oral argument with respect to both defense motions for summary judgment by filing two one-sentence motions simply requesting a hearing. By way of reply to Defendants' joint objection to his motions for oral argument, Plaintiff supported his request for a hearing by noting that six motions have been filed relating to summary judgment, and by further noting that Defendants elicited over three days of deposition testimony from Plaintiff, thereby creating an extensive factual record.

Local Rule 7.1E states, "Motions will be decided by the court without oral hearing, unless a hearing is ordered by the court." N.D. Ga. R. 7.1E. In the current matter, all necessary evidence is before the Court, and the Court is unpersuaded by Plaintiff's assertions regarding the need for oral ar-

---

**3.** This incident gave rise to Plaintiff's assault claim which the Court has deemed to have been abandoned.

gument. Consequently, Plaintiff's motions for oral argument are denied.

### B. *Defendants' Motions to Strike*

Defendants Gwinnett County and Conway and Defendants PHS and Gebhardt each moved to strike Plaintiff's responses to their respective motions for summary judgment. In addition, Defendants Gwinnett County and Conway moved to strike four exhibits attached to Plaintiff's response. Defendants PHS and Gebhardt moved to strike one exhibit attached to Plaintiff's response.

#### 1. *Defendants Gwinnett County and Conway's Motion to Strike*

Defendants move to strike Plaintiff's thirty-nine page response to their motion for summary judgment on the basis of its grossly exceeding the twenty-five page limit set by Local Rule 7.1D. Defendants ask this Court to exercise its discretion under Local Rule 7.1F and decline to consider Plaintiff's response. Plaintiff concedes failure to comply with the Rule's page limitation and failure to seek leave of court for such noncompliance. Plaintiff attempts to justify his noncompliance based on an alleged voluminous factual record in this case.

The Court finds Plaintiff's justification wholly unpersuasive. The Local Rules are mandatory, and are in place to ensure a fair and just pretrial process. If the rather limited factual record in this case warranted departure from the Rules, the cases to which the Rules applied would be rare indeed. In an effort to decide this case on its merits, however, the Court declines to exercise its discretion to disregard Plaintiff's response.

Defendants also move to strike Exhibits 1, 2 and 3 attached to Plaintiff's response on the basis that said exhibits are not sworn, certified, authenticated or otherwise presented in compliance with Fed.

R.Civ.P. 56(e). Plaintiff counters that Exhibit 1, a set of undated, unidentified photographs of various human appendages presumably affected by psoriasis, was authenticated by PHS physician Mark Majoch, M.D., at deposition. Plaintiff's counsel, however, disavowed any attempt at authentication of the photographs at Majoch's deposition, and Plaintiff offers no other method of authentication. Exhibits 2 and 3 are collections of unidentified documents. Plaintiff urges that the documents should not be stricken because Defendants authenticated these very same documents for use in their motion for summary judgment. Plaintiff offers no support for a respondent's ability to rely on cross-authentication. Because Exhibits 1, 2, and 3 were not properly authenticated or verified as required by Fed.R.Civ.P. 56(e), said exhibits are stricken from Plaintiff's response. *See Lugue v. Hercules, Inc.,* 12 F.Supp.2d 1351, 1355–56 (S.D.Ga. 1997).

■ Finally, Defendants move to strike Exhibit 4, the affidavit of Gerald Edward Blackford, Jr. Defendants assert Mr. Blackford's affidavit should be stricken because he was not identified as a witness in Plaintiff's response to Defendant's discovery requests or in Plaintiff's initial disclosures. Fed.R.Civ.P. 26(a)(1)(A) requires a party to provide the opposing party with the name, address and telephone number of each individual likely to have discoverable information which may be used to support the disclosing party's claims or defenses. Mr. Blackford was an inmate at the GCDC during Plaintiff's incarceration at the facility. Plaintiff's counsel attempts to excuse the failure to disclose Mr. Blackwood based on the large number of inmates at the GCDC who may possess relevant information and Defendants' superior position to determine the identity of such inmates. This assertion alone is not suffi-

cient to obviate counsel's duty to determine and disclose with due diligence what evidence supports Plaintiff's causes of action. Accordingly, Exhibit 4 is stricken.

For the reasons set forth above, Defendants Gwinnett County and Conway's motion to strike is denied in part, granted in part.

### 2. *Defendants PHS and Gebhardt's Motion to Strike*

Defendants move to strike both Plaintiff's response to their motion for summary judgment and the affidavit of Mr. Gerald Edward Blackford, Jr. Defendants' arguments for striking said brief and affidavit are similar to those put forth in Defendants Gwinnett County and Conway's motion to strike. In keeping with its ruling on the prior motion to strike, the Court denies Defendants' motion to the extent it seeks to strike Plaintiff's response, and grants Defendants' motion to the extent it seeks to strike Mr. Blackford's affidavit.

### C. *Defendant Conway's Motion for Leave To File Supplemental Brief*

Defendant Conway seeks leave to file a supplemental brief in support of his motion for summary judgment. Local Rule 56.1A provides that supplemental briefs and materials shall not be considered on a motion for summary judgment except upon court order. N.D. Ga. R. 56.1A. Because the Court has before it the necessary and relevant evidence needed to rule on the issues presented for summary judgment, Defendant Conway's motion to file a supplemental brief is denied.

### IV. *Summary Judgment*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

tled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To prevail on the motion for summary judgment, Defendants must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on Defendants' motions for summary judgment, the Court must view the evidence in a light most favorable to Plaintiff. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If Defendants make a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

As noted above, Plaintiff charges Defendants with deliberate indifference to his serious medical needs. In support of his claim, Plaintiff attacks the method and quality of the treatment of his psoriasis and related conditions while incarcerated at the GCDC. Plaintiff asserts that his psoriasis lesions bled through both clothing and bed sheets without timely replacement of either. Plaintiff also complains of his inability to take warm baths, a treatment recommended by all dermatologists who saw him. Although the GCDC was not equipped with bathtubs, Plaintiff alleges that he should have been allowed to use the available baptismal pool for this purpose. Furthermore, Plaintiff points to a ten-day period between his arrival at the GCDC and his initial examination by a PHS physician as evidence of improper care. Upon his initial examination by the physician, who noted Plaintiff's was the worst case of psoriasis he had encountered, Plaintiff maintains he should have been immediately sent to a specialist.

Other evidence Plaintiff relies upon in support of his claim includes the lack of notes in Plaintiff's PHS medical files concerning his arthritic condition and joint swelling. Likewise, Plaintiff takes issue with PHS physicians' treatment of his neck pain as a muscular problem without having looked at Plaintiff's MRI, and despite their knowledge of his prior spinal condition. Plaintiff also notes PHS failed to secure his attendance at a follow-up appointment with the off-site dermatologist Plaintiff was originally referred to, and PHS was tardy in its completion of lab work ordered by Plaintiff's rheumatologist.

■ Plaintiff predicates his 42 U.S.C. § 1983 claim for deliberate indifference on violation of his Eighth Amendment right to be free from "the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Eighth Amendment, however, only protects individuals incarcerated subsequent to and because of a lawful conviction of a crime. *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir.1985). Conditions of confinement imposed on pretrial detainees such as Plaintiff are governed by the Fourteenth Amendment Due Process Clause. *Id.* Nevertheless, for purposes of the Court's analysis, "the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Id.* at 1574. Therefore, the Court will make use of the Eighth Amendment standard in analyzing Plaintiff's claim.

■ Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment proscription against "unnecessary and wanton infliction of pain." *Estelle* 429 U.S. at 104, 97 S.Ct. 285. "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th

Cir.2003). A plaintiff must initially provide evidence of an objectively serious medical need. *Id.* Next, a plaintiff must prove that the prison official acted with "deliberate indifference" to the serious medical need. *Id.* Assuming without deciding that Plaintiff's psoriasis and related conditions represented a serious medical need, the Court finds Defendants did not act with deliberate indifference to such a need.

Deliberate indifference requires more than a finding of mere negligence. *Estelle*, 429 U.S. at 106, 97 S.Ct. 285. Likewise, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* The United States Court of Appeals for the Eleventh Circuit has characterized deliberate indifference as follows,

'[A]n official acts with deliberate indifference when he knows that an inmate is in serous need of medical care, but he fails or refuses to obtain medical treatment for the inmate.' Alternatively, '[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable.' For example, a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference.

*Farrow*, 320 F.3d at 1246 (citations omitted).

In the case at bar, it is clear that Plaintiff's condition greatly deteriorated from the time of his arrival at the GCDC until his release. It is also clear that Defendants had a terribly difficult time treating Plaintiff's worsening condition. The evidence, however, does not support a finding

that Defendants' actions rose to the constitutionally proscribed level of deliberate indifference. On the contrary, Plaintiff was seen by PHS physicians on seven occasions and by PHS nurses at least fifteen times in just under five months of confinement. Included in Plaintiff's treatment was a five-day stay in the GCDC medical unit for constant observation by medical staff. In addition to Plaintiff's treatment at the GCDC, Plaintiff was transported to off-site specialists on over twenty occasions during this time. Included in these specialist visits were consultations with Plaintiff's own rheumatologist and dermatologist, and beginning in December 2000, tri-weekly PUVA light treatments.

There is no evidence that the missed appointments (Plaintiff estimates he was taken to only around eighty percent of his scheduled appointments) and tardy lab work of which Plaintiff complains were the result of anything more than negligence. Furthermore, many of Plaintiff's specific complaints relate to the quality of care he received rather than to the lack of care. The absence of notes in Plaintiff's PHS medical files relating to Plaintiff's arthritis and PHS's treatment of Plaintiff's neck and back pain as a muscular condition rather than spinal injury both sound more in the nature of medical malpractice rather than conscious disregard or deliberate indifference to a known medical need. In the same vein, Plaintiff's allegation that he should have been allowed bathing time in the GCDC baptismal pool rather than the PHS physician-prescribed daily showering with Aveeno relates to modes of treatment, not lack of treatment. Plaintiff's charge that he was allowed to go lengthy periods of time without replacement of bloody bed sheets and clothing, while quite troubling, does not in and of itself indicate a constitutional denial of medical care. In sum, the evidence does not support a finding that Defendants exhibited deliberate indifference toward Plaintiff's psoriasis and related conditions. *Compare Hamm*, 774 F.2d at 1575 ("This evidence shows that [plaintiff] received significant medical care while at the jail. Although [plaintiff] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.") *with Farrow*, 320 F.3d at 1247 ("finding in case involving inmate whose lack of oral hygiene caused swollen, bleeding gums along with weight loss and malnutrition that the substantial and inordinate [fifteen-month] delay in treatment raises a jury question as to [defendant's] deliberate indifference towards [plaintiff's] serious medical need.").

Having found no deliberate indifference towards Plaintiff's medical care, the claim that Plaintiff was denied his due process rights under the Fourteenth Amendment fails. Without an underlying deprivation of this constitutional right, Plaintiff's 42 U.S.C. § 1983 claim against each Defendant fails as a matter of law.[4] Accordingly, both defense motions for summary judgment are granted.

## V. *Conclusion*

For the reasons set forth above, Plaintiff's motions for oral argument on Defendants' motions for summary judgment [## 58, 59] are DENIED, Defendants Gwinnett County and Conway's motion to strike [# 55] is DENIED in part, GRANTED in part, Defendants Prison Health Services and Gebhardt's motion to strike [# 65] is DENIED in part, GRANTED in part, Defendant Conway's motion for leave to file supplemental brief [# 73] is DENIED, Defendants Prison Health Services

4. Although the standard for holding each Defendant liable under Section 1983 varies among Defendants, without an underlying constitutional violation there can be no Section 1983 liability.

and Gebhardt's motion for summary judgment [# 43] is GRANTED and Defendants Gwinnett County and Conway's motion for summary judgment [# 46] is GRANTED.