[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 17, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10403
Non-Argument Calendar
_____

D. C. Docket No. 06-14111-CV-KMM

EMMITT HARVEY,

Plaintiff-Appellant,

versus

CITY OF STUART, a municipality,
EDWARD M. MORLEY,
in his official capacity as Former Chief of the
City of Stuart Police Department,
WILLIAM B. JAQUES,
in his individual capacity and as an Officer for
the City of Stuart Police Department,
FLAMUR ZENELOVIC,
in his individual capacity and as an officer for
the City of Stuart Police Department,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 17, 2008)

Before ANDERSON, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Emmitt Harvey filed suit under 42 U.S.C. § 1983 against police officers William Jaques and Flamur Zenelovic (collectively "the defendants"), in their individual capacities, the City of Stuart ("the City"), and Chief of Police Edward Morley, in his official capacity, for events relating to his arrest on November 22, 2002.[1] Harvey, proceeding pro se, now appeals the district court's orders dismissing various allegations against the City of Stuart and Chief of Police Morley and granting summary judgment in favor of defendants Jaques and Zenelovic. For the reasons stated below, we affirm.

## I.

We first address the dismissal of Harvey's claims against the City and the Police Chief and his conspiracy allegation.[2] These claims were properly dismissed. Section 1983 does not provide for vicarious liability. Cook ex. rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115-1116 (11th Cir.

---

[1] In his complaint, Harvey alleged false arrest, excessive force, battery, intentional infliction of emotional distress and substantive due process violations arising from the use of force and police brutality against all four defendants, inadequate training and supervision and custom and practice of illegal conduct against Morley and the City, civil conspiracy by Jaques, Zenelovic, and the City, and equal protection and due process violations against the City, Jaques, and Zenelovic arising from racial profiling.

[2] We review a 28 U.S.C. § 1915(e)(2)(B)(ii) and Rule 12(b)(6) dismissal de novo, viewing the allegations in the complaint as true. Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

2

2005). A municipality may be liable under § 1983 for the actions of a police officer "only when municipal 'official policy' causes a constitutional violation." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, (1978)). A plaintiff must "identify a municipal 'policy' or 'custom' that caused [his] injury." Id. (internal citation omitted). Harvey failed to identify any policy or custom that caused a constitutional violation, and his vague and conclusory allegations were insufficient to support the complaint. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984). Thus, the claims for false arrest, excessive force, and due process and equal protections violations by the individual officers are not cognizable against the City.

As for the conspiracy claim, Harvey failed to allege facts that would, if proven at trial, establish that the defendants had conspired to violate his constitutional rights. Thus, the court properly dismissed the conspiracy claim. GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1370 (11th Cir. 1998) (holding that a complaint that fails to make particularized allegations that a conspiracy existed in a § 1983 claim should be dismissed).

## II.

We turn now to the district court's order granting summary judgment in

3

favor of the defendant police officers, Jaques and Zenelovic. This court reviews a district court's grant of summary judgment <u>de novo</u>, viewing the evidence in the light most favorable to the party opposing the motion. <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1299 (11th Cir. 2002). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); <u>Eberhardt v. Waters</u>, 901 F.2d 1578, 1580 (11th Cir. 1990).

*BACKGROUND*

According to the evidence not in dispute, Harvey and a friend were outside a rooming house around 10:00 pm on November 2002. Jaques and Zenelovic, driving an unmarked vehicle with tinted windows, were in a high crime and high narcotics trafficking area when they saw Harvey and an unidentified companion in a dark alley in an area marked by a posted "No Trespassing" sign.[3] The officers recognized Harvey from past interactions, knew that he did not live at that location, and inferred that he was trespassing. Jaques and Zenelovic drove up to Harvey,

---

[3] Although Harvey repeatedly asserts that he was not trespassing and had permission to be at that location, he never disputes the existence and presence of No Trespassing signs. Faced with the defendants' affidavits that there were No Trespassing signs and Harvey's failure to rebut this evidence, we accept the defendants' evidence as true. See <u>Farrow v. West</u>, 320 F.3d 1235, 1248-49 (11th Cir. 2003) (highlighting the need to rebut evidence in order to survive summary judgment).

blocking his path and frightening him. As the officers exited the car, Harvey tried to leave because the officers did not immediately identify themselves nor were they wearing police uniforms. Jaques followed Harvey, identified himself as police, and called for Harvey to stop. Jaques then tackled Harvey, knocking Harvey to the ground and injuring his shoulder, knee, hand, foot, and toes.[4] Zenelovic then came around the corner to assist, using a "hammer lock technique" to subdue Harvey. This technique caused Harvey pain to his wrist, back, and shoulder. After being handcuffed and arrested, Harvey was placed in the officers' car. He complained of pain and was taken to the emergency room, where he was treated for stubbed toes, a dislocated finger, and a bruised knee. Harvey alleged in his complaint that the officers injured his head, neck, and shoulder when they grabbed his arms to handcuff him; the medical records, however, do not show any trauma, bruises, or treatment to the head, neck, or shoulder, and Harvey has not specified what injuries occurred to those areas. Harvey was not charged with trespassing, and the State declined to prosecute Harvey for resisting arrest because the arrest affidavit was insufficiently detailed for the State to prove that charge beyond a reasonable doubt.

---

[4] The officers dispute this version of events. They concede they were in an unmarked car, but assert that the car was known in the community to be a police vehicle. They further contend that they were wearing police clothing, and identified themselves as police as soon as they exited the car, at which point Harvey fled. Jaques also stated in his affidavit that he did not tackle Harvey, but rather Harvey tripped while running and injured himself then. As stated above, we must, however, view the facts in the light most favorable to Harvey in reviewing a summary judgment ruling.

The district court granted summary judgment on Harvey's unlawful arrest claim based on the Magistrate Judge's Report and Recommendation finding that the officers were entitled to qualified immunity because they had arguable probable cause to arrest Harvey for either resisting arrest without violence or trespassing. The court also granted summary judgment on the excessive force claim holding that the police were justified in using some force to arrest Harvey, the force was limited in scope, and the injuries were minimal.[5]

*DISCUSSION*

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation omitted). This court applies a two-step test to determine if qualified immunity should apply.[6] First, the court considers "whether the plaintiff's allegations, if true, establish a constitutional violation." Vinyard, 311 F.3d at 1346 (alteration and quotation omitted). Second, if there was a constitutional violation, the court must

---

[5] Having disposed of all federal claims, the court then declined to exercise supplemental jurisdiction over the state law claims. Harvey has not appealed the dismissal of those claims.

[6] Typically, the government defendant must also prove that he was acting within his discretionary authority. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). Neither party, however, disputes that Jaques and Zenelovic were acting within their discretionary authority.

address "whether the right was clearly established." Id. (quotation omitted).

1. False Arrest

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004). More specifically, an arrest made without probable cause runs afoul of the Fourth Amendment's prohibition of unreasonable searches and seizures. Skop v. City of Atlanta, 485 F.3d 1130, 1143 (11th Cir. 2007). Probable cause "to arrest exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997) (quotation omitted). An arrest supported by probable cause is an absolute bar to a § 1983 false arrest claim. Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996).

Whether the defendants had probable cause depends on the elements of the alleged crime. Crosby v. Monroe County, 394 F.3d 1328, 1333 (11th Cir. 2004). Here, Harvey faced two possible charges—resisting arrest and trespassing. If either charge was supported by probable cause, the defendants are entitled to qualified immunity. Skop, 458 F.3d at 1138. We conclude that the defendants had

7

probable cause to arrest Harvey for trespassing, and we, therefore, agree with the district court that Harvey's § 1983 claim for false arrest is barred.[7]

Under Florida law, the crime of trespassing on property other than a structure or conveyance "occurs when: [a] person who, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance . . . [a]s to which notice against entering or remaining is given, either by actual communication to the offender or by posting . . . ." Fla. Stat. § 810.09(1)(a)(1). Here, the defendants saw Harvey standing at a location where they knew he did not live and where "No Trespassing" signs were posted. These circumstances were sufficient to give them probable cause to believe that Harvey was trespassing and could be arrested for that crime. Harvey's contention that he had permission to be there and was not, therefore, actually trespassing is not relevant to whether the officers had probable cause at the time of the arrest. See Illinois v. Wardlow, 528 U.S. 119, 126 (2000) (noting that "persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent"). Nor is it relevant that the officers reported in their arrest sheets that he was arrested for the separate crime of resisting arrest. See Bailey v. Board of County Comm'rs of Alachua County, Fla., 956 F.2d 1112, 1119 n.4 (11th Cir.

---

[7] Having found that probable cause existed as to trespassing we need not address whether probable cause existed on resisting arrest.

1992) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest").

2. Excessive Force

The Fourth Amendment provides the right to be free from excessive force in the course of any seizure of the person. Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007). However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [person's] constitutional rights." Neal v. Fulton County Bd. of Educ., 229 F.3d 1069, 1076 (11th Cir. 2000) (internal quotation omitted). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "In order to determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." Lee, 284 F.3d at 1197 (quotation omitted). This must be decided "on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir.1993) (internal quotation marks omitted). This court has

identified several factors to use in determining whether an officer's use of force was objectively reasonable, including "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008).

Here, viewing the evidence in the light most favorable to Harvey, the district court properly granted summary judgment on his claim that Jaques and Zenelovic used excessive force in arresting him. As discussed above, Jaques and Zenelovic were lawfully arresting Harvey, and so had the right to use some level of force to effectuate that arrest. Assuming, as we must, that Harvey did not trip and fall but rather that the defendants actually exerted force to complete the arrest, the amount of force used by these officers was reasonable. According to the evidence, Harvey had fled police and was uncooperative as the defendants tried to handcuff him. In order to handcuff him, Jaques and Zenelovich grabbed Harvey's arm, forced it behind his back, and cuffed him. Harvey also alleged that Zenelovich used a "hammer lock" technique, but he does not describe what this entailed. Harvey's alleged injuries were stubbed toes, a dislocated finger, and a bruised knee— injuries that are not so extensive as to indicate malicious use of unnecessary force.

10

Under the circumstances, the amount of force was reasonable. "[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). The defendants' use of de minimus force in this case was not unreasonable, and we affirm the district court's grant of summary judgment on Harvey's excessive force claim.

## III.

For the foregoing reasons, we **AFFIRM** the district court's dismissal of the claims against the City and the Chief of Police and the conspiracy claims as well as the district court's order granting summary judgment to defendants Jaques and Zenelovic on the remaining claims.