[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 06, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14017
Non-Argument Calendar

_____

D. C. Docket No. 04-02636-CV-5-CLS

JULIA HUFF WALKER,

Plaintiff-Appellant,

versus

HUNTSVILLE, ALABAMA, CITY OF,
CHIEF COMPTON OWENS,
individually and in his Official Capacity
as Chief of Police of the City of
Huntsville, Alabama,
R. ROSSER, ID# 09270,
J. WATKINS, ID# 11916,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 6, 2009)

Before BIRCH, CARNES and FAY, Circuit Judges.

PER CURIAM:

Julia Huff Walker sued the City of Huntsville, its police chief, and police officers Rhonda Rosser and Jennifer Watkins under 42 U.S.C. § 1983 and an array of state law causes of action. The district court granted summary judgment to the defendants on all of Walker's claims. Walker appeals only the district court's rejection of her Fourth Amendment claim against the officers and her Fourteenth Amendment claims against all of the defendants.

## I.

Walker was driving home from a friend's house on Sunday, July 28, 2002 when Ronald Sheaffer, who was sitting on his porch, saw her drive into his neighbor's yard. Sheaffer saw Walker make a U-turn onto the wrong side of the street, smash a mailbox, then drive onto a sidewalk and eventually stop in the middle of an intersection, where she slumped over the wheel. Sheaffer called the police.

Officer Watkins arrived at the scene, noticed the fallen mailbox, and saw that Walker's car was still in the middle of the intersection, running, and in drive. Officer Watkins placed Walker's car in park, then lifted her head from the steering wheel and asked if she was okay. Walker's response was unintelligible. Officer

Watkins observed that Walker seemed "half asleep and half awake," her speech was very slurred, her eyes were bloodshot, and her hair was in disarray. Walker did not appear to know what was going on and stated that she was in her living room and that she needed to get dressed. By then Officer Rosser also had arrived at the scene and witnessed Walker's condition. All four witnesses— Officers Watkins and Rosser, Sheaffer, and Sheaffer's neighbor—testified that they believed that Walker was drunk or on drugs. Though no one smelled alcohol on Walker, Officer Watkins found a number of unidentifiable pills in her purse.[1] Walker was arrested for DUI under Ala. Code § 32-5A-191(a)(5)[2] and for stopping in the roadway under § 32-5A-137.

Walker was booked into jail at around 6:00 pm on Sunday evening. She remained in custody for more than 22 hours. On her arrival at the jail, Walker was found too "intoxicated" for fingerprinting or medical examination, and she remained in the booking area of the jail for her entire stay there except for four hours in court. Overnight on Sunday, Walker was coherent enough to receive the

---

[1] Later analysis determined that they were caffeine pills.

[2] Ala. Code § 32-5A-191 states: (a) A person shall not drive or be in actual physical control of any vehicle while: . . . (5) Under the influence of any substance which impairs the mental or physical faculties of such person to a degree which renders him or her incapable of safely driving."

3

jail's basic medical screening, which consists of a series of questions designed to elicit the subject's medical condition. Early Monday morning, she was evidently seen by a nurse at the jail. Through all of this, it appears that Walker remained too impaired to enter the general jail population, but not impaired enough, or impaired for long enough, to cause serious concern to the jail staff.

On Monday afternoon, Walker's sons located her at the jail and took her home. Walker signed her own property release form and refused her sons' inquiries about medical attention. She remained to some degree incoherent and suffered from a headache and memory loss. Not until Tuesday afternoon did Walker's son insist on taking her to the hospital, where she was initially considered a non-urgent patient. Hours later, a CT scan revealed a bleeding aneurysm in her brain. Late that night, Walker was transferred to another hospital, underwent emergency brain surgery, and survived.

## II.

We review <u>de novo</u> the district court's grant of summary judgment. <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1361 (11th Cir. 1999). "We apply the same legal standards as the district court and view all facts and reasonable inferences in the light most favorable to the nonmoving party." <u>Gish v. Thomas</u>, 516 F.3d 952, 954 (11th Cir. 2008).

4

**III.**

Walker first contends that Officers Rosser and Watkins arrested her without probable cause to believe that she had been driving under the influence in violation of Ala. Code § 32-5A-191. Accordingly, she argues that the officers violated her Fourth Amendment rights and that the district court erred when it granted summary judgment to them.

To establish a violation of the Fourth Amendment, Walker must show that her arrest was unreasonable. Brower v. County of Inyo, 489 U.S. 593, 599 (1989) ("Seizure alone is not enough for § 1983 liability; the seizure must be unreasonable.") (quotation marks omitted). An arrest is unreasonable if it is not supported by probable cause. Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Id. (citing Gerstein v. Pugh, 420 U.S. 103, 111 (1975)).

Officer Watkins argues that she had probable cause to arrest Walker for DUI. Witnesses told Officer Watkins that Walker had been driving in people's yards and that she had hit a mailbox, and the damaged mailbox was at the scene for all to see. Officer Watkins found Walker "half-asleep, half-awake"—

5

essentially passed out at the wheel in the middle of the road; her eyes were bloodshot, her speech was slurred and unintelligible; she was disoriented and did not know where she was. Additionally, though no one smelled alcohol, Walker's purse contained pills of an unknown kind. The pills were later found to be caffeine, and Walker turned out to be suffering from bleeding in her brain and not from the influence of drugs, but the facts Officer Watkins observed were enough to supply probable cause. See Qian v. Kautz, 168 F.3d 949, 954 (7th Cir. 1999) ("easily" finding probable cause to arrest a driver for DUI where the officer observed a slumped, unkempt, unsteady man with slurred speech who had been in a one-car accident and whom the officer did not know was suffering from a subdural hematoma).

Accordingly, the district court's grant of summary judgment to Officers Watkins and Rosser on Walker's Fourth Amendment claim was proper.[3]

## IV.

---

[3] Because no constitutional right was violated, we need not further discuss the officers' qualified immunity defense. Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

Walker also contends that all of the defendants violated her Fourteenth Amendment rights by acting with deliberate indifference to her serious medical condition while she was in custody. "To prevail, [a] Plaintiff must prove both [1] an objectively serious medical need and [2] that a Defendant acted with deliberate indifference to that need." Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008).

First, "[i]n our circuit, a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citation omitted). Whether Walker possessed an "objectively serious medical need" while in police custody depends on whether physician's diagnoses that occur only *later* qualify, or if not, on whether Walker's suspiciously lengthy "intoxication" should have been "easily recognized" as requiring a doctor's attention. Regardless of whether Walker can satisfy the test for "objectively serious medical need," however, she cannot demonstrate deliberate indifference.

To establish "deliberate indifference" to her serious medical need, Walker must demonstrate that a defendant had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross]

7

negligence." Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005); Burnette, 533 F.3d at 1330. Deliberate indifference is a subjective test, and requires a plaintiff to demonstrate that a defendant *knew* of her condition or of serious medical risk. Burnette, 533 F.3d at 1331 ("No liability arises under the Constitution for an official's failure to alleviate a significant risk that he should have perceived but did not.") (quotation marks omitted); Carr v. Tatangelo, 338 F.3d 1259, 1275 (11th Cir. 2003) (finding no deliberate indifference where police officers actually shot a suspect but were unaware that he had been hit).

Walker has produced no evidence that officers Rosser or Watkins, or police chief Owens, or anyone at the Huntsville jail knew that she had a serious medical condition. In fact, no one at all was aware of it until her CT scan; even the nurse at the hospital's emergency room triage considered her a non-urgent patient and kept her waiting more than an hour. The fact is that Walker's symptoms were easily confused with the effects of drugs or alcohol. A lot of people made that mistake, and even if it was negligent of the officers or the jailers not to provide Walker with more intensive medical care, mistakenly failing to identify a brain aneurysm is not *deliberate* indifference. Because Walker has entirely failed to produce evidence for an essential element of her Fourteenth Amendment claim—that a defendant was aware of a serious medical condition and deliberately ignored

8

it— summary judgment against her was proper.  See Celotex, 477 U.S. 318, 323 (1986) (there can "be no genuine issue as to any material fact . . .[where there is] a complete failure of proof concerning an essential element of the nonmoving party's case.").[4]

## V.

Finally, Walker appears to make a claim against police Chief Owens and the City of Huntsville for enacting police policies that resulted in deliberate indifference to constitutional rights.[5]  See Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).  These claims fail because we have found that there is no underlying constitutional violation.  Beshers v. Harrison, 495 F.3d 1260, 1274 (11th Cir. 2007) ("We need not address the Appellant's claims of municipal or supervisory liability since we conclude no constitutional violation occurred."); Vineyard v. County of Murray, 990 F.2d 1207, 1211 (11th Cir. 1993) ("Only when it is clear that a violation of specific rights has occurred can the question of § 1983

---

[4]  Therefore we need not, and do not, reach the issue of whether Walker has demonstrated that her lack of medical care while in police custody actually caused her any injury or worsened her aneurysm or its effects.  Nor do we need to reach the officers' qualified immunity defense. Saucier, 533 U.S. at 201.

[5]  Walker's claims against Chief Owens and the City of Huntsville are sketchy, hardly argued, and difficult to define.  The details of those claims are unimportant, however, because in any event they are doomed by Walker's failure to avoid summary judgment on the alleged underlying constitutional violations.

municipal liability for the injury arise."); see also Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999) (stating that a claim for supervisory liability fails where there is no underlying constitutional violation).

In sum, Walker nearly died of a brain aneurysm. No one— not Officers Watkins or Rosser, not the two witnesses to her car accident, not the Huntsville jailers, not Walker's own two sons, and not even an ER nurse performing triage— was able to distinguish her symptoms from some form of intoxication or to recognize them as requiring immediate medical attention. Walker endured an unfortunate series of events, but we can find no violation of her constitutional rights.

**AFFIRMED.**