[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11339
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cv-00112-CAR

VIRGINIA SMITH,
Administrator of the Estate of deceased GEROME SMITH,

Plaintiff - Appellant,

versus

FRANKLIN COUNTY,
SHERIFF STEVIE THOMAS,
JOHN AND OR JANE DOES,
1-5,
OFFICER ANGELA L. PARKER,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(March 8, 2019)

Before MARTIN, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

This appeal arises out of the death of Gerome Smith ("Smith") while in pretrial custody at the Franklin County Detention Center. After Smith's death, Virginia Smith, his wife and the administrator of his estate, sued Franklin County, Sheriff Stevie Thomas, and Officer Angela Lee Parker, alleging claims of deliberate indifference under 42 U.S.C. § 1983, as well as state-law tort claims. The § 1983 claims alleged that the defendants violated Smith's constitutional rights by providing grossly inadequate or delayed, or both, medical care in response to his serious medical needs, causing his death. The district court granted summary judgment to the defendants on the § 1983 claims and dismissed the state-law claims without prejudice. After careful review, we affirm.

## I.

The relevant facts are largely undisputed. On November 14, 2013, Smith was arrested on an outstanding probation-violation warrant and for driving without a license. He was taken to the Franklin County Detention Center ("Jail") where he was screened and booked. He informed Jail staff at booking that he suffered from a lung injury, asthma, and high blood pressure, and that he was allergic to penicillin.

The next day, November 15, Smith was screened by a nurse, who noted on an Inmate Custody Report that he had previously been prescribed a blood-pressure

2

medication, Lisinopril, but had not been able to afford that medication for more than a year. The nurse noted that he would be given this medication once it was approved by the presiding physician. The nurse also noted that Smith could receive an Albuterol nebulizer breathing treatment for breathing difficulties and the medication Clonidine for high blood pressure, both according to the Jail's medical protocols. The nurse added Smith to the doctor call list for November 21, 2013.

Smith received Lisinopril on the morning of November 16.

At around 1:10 a.m. the next morning, on November 17, defendant Parker, a detention officer, checked on Smith. This was her first interaction with him. He appeared to be having some physical difficulties; he was standing at the window to the detention area holding his chest. Parker had prior nursing experience but was not working as a nurse at the time. Smith told Parker that he had a sore throat and was having trouble breathing. Smith was wheezing as he breathed, and when Parker took his blood pressure it was elevated at 190/118. Parker took Smith to the Jail's medical area and checked his records, noting the information set out above. She then took his pulse (normal) and checked his oxygen level (94%).

Based on her observations and the information in his file, Parker gave Smith a breathing treatment, two ibuprofen for his sore throat, a Claritin tablet for sinus drainage, and 0.1 mg of Clonidine for high blood pressure, in accordance with the Jail protocol and the nurse's notes. After these treatments were administered, Smith

3

told Parker he could breathe more easily, and his oxygen level had improved to 99%.
Parker then escorted Smith back to the detention area. In total, Smith spent around 20 minutes in the medical area.

About four hours later, around 5:30 a.m., Parker saw Smith sitting at a table in the detention area and looking as though he felt unwell. She entered the pod 25 minutes later (at 5:55 a.m.) to check on him. Smith could not speak because his tongue was severely swollen. He pointed to his throat and responded to questions by nodding or shaking his head. Parker radioed for a sergeant to call 911. Because of his swollen tongue, Parker thought Smith was having an allergic reaction, so she crushed two Benadryl tablets into water, but Smith was unable to swallow them. Parker took Smith to the booking area in a wheelchair to await the ambulance and checked his oxygen level, which was at 100%.

At 6:10 a.m., an emergency-medical-services ("EMS") crew arrived and took Smith to the hospital. Smith stopped breathing at some point on the way to the hospital. EMS performed CPR, but they were unable to revive him. After Smith's death, the coroner performed an autopsy and prepared a report. The report stated that, in addition to "severe hypertensive and atherosclerotic heart disease, which contributed to his death significantly," there was a "probable adverse reaction to Lisinopril."

**II.**

Following Smith's death, Virginia Smith, his wife and the administrator of his estate (the "Estate"), filed this lawsuit against Officer Parker, Sheriff Thomas, and Franklin County ("Defendants"). The Estate brought 42 U.S.C. § 1983 claims alleging deliberate indifference to Smith's serious medical needs as well as various state-law claims. After discovery, Defendants moved for summary judgment, arguing that there was no violation of Smith's constitutional rights and raising several forms of immunity in defense. The district court granted summary judgment in favor of Defendants on the § 1983 claims, concluding that the Estate had not established a constitutional violation, and then dismissed the state-law claims without prejudice to their being litigated in state court.[1] The Estate appeals.

## III.

"We review a district court's grant of summary judgment *de novo* considering all the facts and reasonable inferences in the light most favorable to the non-moving party." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). Summary judgment is appropriate if, based on the evidentiary materials in the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[1] In ruling on the summary-judgment motion, the district court stated that the Estate had withdrawn its § 1983 claims against Franklin County and against Sheriff Thomas in his official capacity. This left the Estate's claims against Parker and against Sheriff Thomas in his individual capacity. In any event, the court explained that the Estate was required to establish a constitutional violation for any of its § 1983 claims, which, in the court's view, it had not done.

5

Because Smith was a pretrial detainee at the time of the alleged violations, his claims are governed by the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015). Nevertheless, the minimum standard allowed by the Due Process Clause is the same as that allowed by the Eighth Amendment for prisoners. *Id.*

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove a claim for deliberate indifference, an inmate must show (1) an objectively serious medical need and (2) that the official subjectively acted with deliberate indifference to that need. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Defendants appear to contest whether Smith had objectively serious medical needs, but we need not address that issue. We agree with the district court that, even construing the record in the light most favorable to the Estate, Defendants did not act with deliberate indifference to Smith's medical needs.

Deliberate indifference has three components the plaintiff must satisfy:  he must show a prison official's "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks omitted). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of

6

treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Id.* Additionally, an officer "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Id.* However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *see Whitley v. Albers*, 475 U.S. 312, 319 (1986) (deliberate indifference is about "obduracy and wantonness, not inadvertence or error in good faith").

The Estate argues that it established a violation of Smith's constitutional rights based on Officer Parker's conduct. It contends that Parker exhibited deliberate indifference in three ways: (1) failing to call a nurse or ambulance following the 1:10 a.m. encounter with Smith on November 17; (2) failing to recheck Smith's blood pressure or monitor him after that encounter; and (3) waiting to call an ambulance after discovering that Smith's tongue was severely swollen. Smith's death is deeply unfortunate. But we cannot say the Estate has shown that his death was the result of Parker's deliberate indifference to his medical needs.

First, we cannot say that Parker's response to Smith's initial complaints of a sore throat and difficulty breathing was so "grossly inadequate" as to constitute deliberate indifference. *See Bingham*, 654 F.3d at 1176. Parker testified that she did not think Smith's situation constituted a medical emergency or required alerting medical personnel because Jail protocols and the nurse's notes provided for treating

7

the symptoms he complained of.  Based on the nurse's notes, Parker gave Smith Clonidine for his high blood pressure, a nebulizer breathing treatment for his breathing difficulties, and ibuprofen and Claritin for his sore throat.  After these measures, Smith's breathing and oxygen level had improved, and he had no further complaints at the time.  Given that the symptoms Smith complained of were anticipated and provided for by the nurse, and these symptoms improved upon Parker's provision of the designated treatment, the record fails to show that Parker knew Smith had a developing life-threatening condition or urgent medical need at that time.[2]  While the Estate questions the extent of the treatment and claims that Parker could and should have done more, the good-faith care Parker provided did not amount to deliberate indifference.  *See Whitley*, 475 U.S. at 319 (deliberate indifference is not established by evidence of "inadvertence or error in good faith").

Second, Parker's failure to monitor Smith or recheck his blood pressure for the next several hours, even if required by jail protocols, was at most negligent.  *See Harris*, 941 F.2d at 1505 ("Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.").  The Estate likens Parker's failure to check on Smith to the defendant's conduct in *Goebert v. Lee County*, but the facts are completely distinguishable.

---

[2] The district court noted that "[n]o evidence in the record indicates the seriousness or severity of a . . . blood pressure reading of 190/118."  The Estate on appeal likewise does not refer to anything in the record regarding the severity of this reading.

8

In *Goebert*, a pregnant inmate with a high risk of miscarriage lost her child after a jail official failed to act in response to her complaint that she needed to see an obstetrician immediately, as recommended by the jail doctor, because she had been leaking fluid for more than nine days, had not felt the baby move for a few days before writing the complaint, and was not having her needs met by the jail's medical staff.    510 F.3d 1312, 1316–19 (11th Cir. 2007).    We said that, based on the information in the plaintiff's complaint, the official "had a duty to look into the matter" and could not simply disregard her complaints "without any investigation or inquiry."  *Id.* at 1327–28.  Because the official failed to investigate her complaint and delayed treatment for no reason other than that he "automatically disbelieve[d] all inmate statements about medical care," we concluded that his conduct "smack[ed] of deliberate indifference."  *Id.* at 1329.

The facts of *Goebert* bear no resemblance to the facts here.  In contrast to the jail official in *Goebert*, who failed to take any steps even to inquire about an ongoing, serious, medical condition that needed attention, Parker immediately responded to Smith's medical complaints and attempted to treat all his symptoms.  While she failed to check up on Smith for the next several hours, there is no evidence, like there was in *Goebert*, that she knew failing to check on Smith would put him at risk of serious harm.

9

The Estate's reliance on Jail protocols is likewise unavailing because the protocols say nothing about Parker's knowledge of the specific risk to Smith. At best, the protocols establish that Parker was negligent and that she should have discovered Smith's deteriorating medical condition, but "[p]roof that the defendant should have perceived the risk, but did not, is insufficient." *See Campbell v. Sikes*, 169 F.3d 1353, 1363–64 (11th Cir. 1999). That "Parker was unaware of Smith's deteriorating condition," Estate's Br. at 20, even if due to her negligent failure to follow protocol, results in the same problem for the Estate: Parker was unaware of Smith's deteriorating condition. Her failure to check on Smith does not satisfy the standard for deliberate indifference on this record.

Third, the Estate's assertion of intentional or unexplained delay in providing medical treatment relies on a factual premise that lacks evidentiary support. The Estate argues that Parker knew as of 5:30 a.m. that Smith's tongue was severely swollen but, despite this knowledge, waited 25 minutes to call an ambulance for no good reason. But although we must construe the record and draw all reasonable inferences in the Estate's favor, *see Mann*, 588 F.3d at 1303, the record cannot reasonably be stretched to support this version of events.

Undisputed evidence in the record shows that, as of 5:30 a.m., Parker knew only that Smith appeared as though he felt unwell. Even the Estate's own statement of facts on appeal acknowledges that Parker did not enter the detention area and

10

evaluate Smith, discovering his swollen tongue, until 5:55 a.m.  Estate's Br. at 7 ("At 5:55 a.m., Parker entered the pod to check on Smith, who—although he could not speak due to his tongue being severely swollen—pointed to his throat and responded to questions by nodding or shaking his head.").  Parker then immediately contacted the sergeant to call 911.

While the record offers no explanation for the 25-minute delay in checking on Smith, there is likewise no evidence to indicate that Parker knew that Smith's general appearance of looking unwell meant that he "had a life-threatening condition or an urgent medical condition that would be exacerbated by delay."  *Goebert*, 510 F.3d at 1330 ("[A]n official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay." (quotation marks omitted)).  Accordingly, we cannot say the 25-minute delay in this is evidence of deliberate indifference.

For these reasons, no reasonable jury could conclude that Parker was deliberately indifferent to Smith's medical needs, despite the deeply unfortunate circumstances of his death.  Because the Estate does not contend that any of its § 1983 claims can survive if Parker did not violate Smith's constitutional rights, we

affirm the grant of summary judgment against the Estate on its § 1983 claims against

Officer Parker, Sheriff Thomas, and Franklin County.[3]

**AFFIRMED.**

---

[3] In addition, because the district court granted summary judgment on the federal claims, it did not abuse its discretion by dismissing the state-law claims without prejudice. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).