[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14027

_____

JAMAL E. COLLINS,

                                             Plaintiff-Appellant,

*versus*

THOMAS FERRELL,
MD, Individual and Official capacities, et al.,

                                             Defendants,

JOY FERRELL,
in her capacity as personal representative
 of Thomas Ferrell's estate,

                                             Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 5:18-cv-00073-LGW-BWC

_____

Before BRANCH, GRANT, Circuit Judges, and CALVERT,[*]
District Judge.

CALVERT, District Judge:

Jamal Collins appeals the district court's order granting summary judgment for Dr. Thomas Ferrell on Collins's 42 U.S.C. § 1983 deliberate indifference to medical needs claims. Collins asserts that, following a knee surgery, Dr. Ferrell deprived him of both his mobility aids and refused to prescribe him sufficient mediation to treat his pain. According to Collins, these actions (or failures to act) constituted deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. Because the undisputed facts show otherwise, we affirm.

**I.**

Collins is an inmate in the custody of the Georgia Department of Corrections. While housed at Ware State Prison

---

[*] The Honorable Victoria M. Calvert, United States District Judge for the Northern District of Georgia, sitting by designation.

("WSP"), he experienced chronic knee pain.  Dr. Ferrell served as WSP's medical director at that time.

Several years before his incarceration at WSP, Collins suffered an injury to his left knee during a high school football game. From that point on, he felt pain in that knee. The pain intensified after Collins was transferred to WSP in early 2017. In February 2017, Dr. Ferrell issued Collins a walking cane with a one-year prescription. Dr. Ferrell examined Collins again in April and referred him to an orthopedic surgeon, Dr. Mark Winchell.

Collins attended his first appointment with Dr. Winchell in April 2017. During this appointment, Dr. Winchell took x-rays on Collins's knee and recommended surgery. Dr. Winchell performed the surgery on Collins's knee on June 6, 2017. After the surgery, Dr. Winchell provided Collins with post-operative instructions that advised Collins his knee was "weight bearing as tolerated" and he should use "crutches as needed." Dr. Winchell did not prescribe any pain medication.

At WSP, Dr. Ferrell devised his own treatment plan for Collins's post-operative knee pain. Dr. Ferrell initially treated Collins's pain with Tylenol #3, which contains an opioid, and 375 mg of naproxen, a nonsteroidal anti-inflammatory drug (NSAID). At the end of June, Dr. Ferrell lowered the Tylenol #3 dosage and prescribed Neurontin. Dr. Ferrell also prescribed physical therapy to improve Collins's range of motion and referred Collins to a pain management clinic.

On July 10, 2017, Collins went to the pain management clinic and was prescribed Voltaren gel and a TENS unit. The notes indicate that Collins's Neurontin dose was increased and that he should continue on his current Tylenol #3 prescription. On July 21, 2017, Collins's Tylenol #3 prescription expired, and Dr. Ferrell did not renew it.

On August 1, 2017, Collins met with Dr. Winchell, who advised him to walk "with a cane" only "as much as [he] can bear." Dr. Winchell recommended that Collins restart Tylenol #3 and that Dr. Ferrell was to evaluate Collins for chronic pain and reissue of Tylenol. Dr. Winchell also prescribed an increase in naproxen. Collins met with Dr. Ferrell six days later. According to Collins, the first thing Dr. Ferrell said during the meeting was something to the effect of, "I'm tired of hearing about all this pain nonsense." During that meeting, Dr. Ferrell took Collins's walking cane from Collin's hand and confiscated it. Dr. Ferrell then told him to leave the room without any examination of his knee, and, from Collins's perspective, "laugh[ed] . . . real snarly like." Dr. Ferrell's notes from the meeting explain that Collins "was told I saw no reason to continue cane-assisted walking. Will [discontinue] cane . . . ." Dr. Ferrell also decreased the Neurontin dose and said he would eventually phase it out and recommended physical therapy for chronic knee pain.

In response, Collins filed a grievance against Dr. Ferrell alleging that Dr. Ferrell improperly confiscated his cane "by snatching the cane out of [his] hand, violently, even in the sight of

Nurse Ashley Boatwright!" Two days later, a nurse discontinued Collins's wheelchair profile and confiscated his wheelchair. Collins filed another grievance against Dr. Ferrell alleging that Dr. Ferrell confiscated his wheelchair as an act of retaliation for the previously filed grievance.

Ten days after his cane was confiscated, Collins reinjured his knee while "walking up and down" some of the hills and slopes in the prison compound. Collins inspected his knee after the injury and observed some drainage. Collins blamed the confiscation of his mobility aids for his injury. Dr. Ferrell examined Collins's left knee that same day and did not note any drainage. Dr. Ferrell determined that Collins's surgical scar was "well healed," and advised him to keep ambulating. Later that month, without explanation, a nurse reissued Collins his walking cane. As a result, Collins's first grievance against Dr. Ferrell was denied because his "cane profile has not been discontinued." The second grievance was also denied because Collins had a cane profile, was receiving physical therapy and pain medication, and had an order for a pain management consultation.

On October 24, 2017, Collins met with Dr. Ferrell to request medication for his knee pain and a wheelchair. Dr. Ferrell noted that besides the surgical scar, Collins's knee appeared normal. Dr. Ferrell told Collins that he observed no reason for continued pain and that he could not order strong medication, but he discussed long-term steroids as an option, and referred Collins to Dr. Winchell for consultation. At the consultation in November 2017,

Collins said, "I need to get Tylenol #3 back for the pain." Dr. Winchell provided a knee injection, recommended naproxen, and referred Collins to Dr. Ferrell for pain management and Tylenol #3. Dr. Ferrell rejected the recommendation to prescribe Tylenol #3 but implemented Dr. Winchell's recommendation to prescribe 500 mg of naproxen twice daily. Dr. Ferrell's notes explain that he "will not order Tylenol #3 as recommended by orthopedist because I do not think it is a good idea." Dissatisfied by this decision, Collins filed another grievance against Dr. Ferrell, in which he complained of "great pain" without Tylenol #3. This latest grievance was denied in January 2018, with the Warden/Superintendent response noting "[t]he pain medicine was not ordered indefinitely. There is an alternate medicine that was given afterward for long-term pain management." By January, Collins believed that his knee condition had deteriorated so much that he could not continue physical therapy without the Tylenol #3 prescription. The following month, Dr. Winchell gave Collins another knee injection.

In March 2018, Dr. Winchell performed an MRI on Collins's knee at the request of Dr. Ferrell. The MRI revealed a torn meniscus and possible ACL tear. On July 31, 2018, Dr. Winchell performed a second surgery on Collins's knee. After the surgery, Dr. Winchell recommended Tylenol #3 to treat Collins's post-operative pain. Specifically, Dr. Winchell recommended 2 tablets every 4 hours for the first 48 hours following surgery; then 2 tablets every 6 hours for the next 24 hours; and then twice daily for 8 days. Upon Collins's return to WSP on August 2, 2018 following the

surgery, he met with Dr. Ferrell. Dr. Ferrell prescribed one Tylenol #3 tablet "now" and then two tablets for the next five days. Collins also received naproxen and Neurontin. At Collins's next orthopedist consultation, Dr. Winchell recommended Tylenol #3 but Dr. Ferrell did not order it. Collins's next visit to Dr. Winchell did not note any issues or mention Tylenol #3. However, a month later, Collins was still requesting Tylenol #3 because his "orthopedist ordered [it]." Rather than prescribe Tylenol #3, Dr. Ferrell continued Collins on naproxen and Neurontin for the rest of the year.

Collins filed this lawsuit against Dr. Ferrell and Elizabeth Martyn, a nurse practitioner at WSP, under 42 U.S.C. § 1983. Martyn moved for dismissal based on Collins's failure to exhaust his administrative remedies as to her, and the district court granted that motion. Dr. Ferrell moved for summary judgment. The district court adopted the Magistrate Judge's report and recommendation that the motion for summary judgment be granted. Collins then filed this appeal.

## II.

We review the district court's grant of summary judgment de novo, "view[ing] all the evidence and draw[ing] all reasonable inferences in the light most favorable to the non-moving party." *Caldwell v. Warden*, 748 F.3d 1090, 1098 & n.13 (11th Cir. 2014). Summary judgment is warranted where the evidence in the record "presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Id.* (quotation

omitted). "Where, as here, an inmate proceeded pro se in the district court, his summary judgment pleadings are construed liberally and 'specific facts' alleged in his sworn complaint can suffice to generate a genuine dispute of fact." *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019).

## III.

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). However, not every claim of inadequate medical treatment is a violation of the Eighth Amendment. *Id.* To prove a deliberate indifference to medical treatment claim, a plaintiff must show: (1) "an objectively serious medical need"; and (2) "that the prison official acted with deliberate indifference to that need." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

Demonstrating a defendant's deliberate indifference, the second element, requires showing a "sufficiently culpable state of mind." *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To show a sufficiently culpable state of mind, a plaintiff must show that the defendant (i) had subjective knowledge of a risk of serious harm; (ii) disregarded that risk; and (iii) acted by conduct that reflects "subjective recklessness as used in the criminal law." *Id.* (quoting *Farmer*, 511 U.S. at 839).

The criminal law standard finds recklessness "only when a person disregards a risk of harm of which he is aware." *Id.* at 1256 (emphasis omitted) (quotation omitted). Generalized awareness of

a serious medical need is insufficient to state a claim of deliberate indifference. *Id.* at 1258. Thus, to establish deliberate indifference, the "plaintiff must show that the defendant official was subjectively aware that his own conduct—again, his own actions or inactions—put the plaintiff at substantial risk of serious harm." *Id.* "Each individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Collins asserts that Dr. Ferrell violated the Eighth Amendment by confiscating his mobility aids and refusing to continue prescribing him Tylenol #3. He argues that a reasonable jury could find that Dr. Ferrell's decision to confiscate his mobility aids was based on frustration rather than medical care and that Dr. Ferrell's cursory treatment equated to no treatment at all. Finally, Collins argues that Dr. Ferrell ignored the pain medication recommendations of Dr. Winchell in favor of ineffective treatments. Because the undisputed facts establish that Dr. Ferrell was not deliberately indifferent to Collins's medical needs, Collins failed to meet his burden on summary judgment under the Eighth Amendment and we affirm the district court's grant of summary judgment.

## A.

The first element of a deliberate indifference to medical needs claim—proof of a serious medical need—is an objective inquiry. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). A serious medical need "is one that has been diagnosed by a physician

as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotations omitted).

The parties do not dispute that the chronic pain Collins experienced following his knee surgery was a "serious medical need." And we have repeatedly held that chronic pain can constitute a serious medical need. *See Hinson v. Bias*, 927 F.3d 1103, 1122 (11th Cir. 2018) (noting that "severe pain that is not promptly or adequately treated can present a serious medical need"); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (painful broken foot can be a serious medical need); *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989) (jury's conclusion of serious medical need supported by evidence of plaintiff's leg collapsing under him, pain, and difficulty walking). Therefore, Collins has met his burden on the first element.

**B.**

The second element, deliberate indifference to the serious medical need, requires Collins to prove that Dr. Ferrell was "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff" and that Dr. Ferrell failed to "'respond[] reasonably to the risk.'" *Wade*, 106 F.4th at 1262 (quoting *Farmer*, 511 U.S at 844–45).

Collins first alleges that a reasonable juror could draw an inference that Dr. Ferrell was subjectively aware that taking away his mobility aids caused a substantial risk of serious harm to Collins. He bases this proposed inference upon Dr. Ferrell's

undisputed awareness of Collins's medical diagnoses and post-surgery instructions to only bear weight "as tolerated" and to use a walking aid "as needed," as well as Collins's prescription for a wheelchair. Collins further argues that "a layperson would easily recognize the serious medical risk posed by confiscating the cane of a person who not only struggled with proper knee motion and pain after a major knee surgery, but also actively relied on his cane for assistance." However, the fact that Collins had knee pain for over 20 years yet had only received a cane a few months prior undermines his argument that Dr. Ferrell knew that taking away his cane would lead to serious harm. Furthermore, the post-surgery instructions to bear weight "as tolerated" and to use a walking aid "as needed" suggest that Collins should have been trying to ambulate without mobility aids to the extent possible, not that he would face a risk of serious harm without them. However, even if Collins could show a fact dispute on Dr. Ferrell's subjective awareness of a risk, he could not show that Dr. Ferrell failed to respond reasonably to the risk.

Collins argues that a reasonable jury could find that Dr. Ferrell acted unreasonably when he took away his mobility aids knowing it would subject him to risk of injury. Collins supports his claim by pointing to our pre-*Wade* decision in *Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). In *Farrow,* a doctor knew an inmate needed dentures and that the inmate complained of pain, weight loss, and bleeding gums, but waited nearly fifteen months after the inmate began the denture construction process to deliver the dentures and provided no dental care to the inmate for eight

months between the second and third steps of the denture construction process. *Id.* at 1246. We held that this "substantial and inordinate delay in treatment raises a jury question as to [the doctor's] deliberate indifference towards [the inmate's] serious medical need." *Id.* at 1246–47. The inmate's "recognized need for denture treatment, the nature of his continuing problems, the sheer length of the delay involved, and the lack of any reasonable explanation for the inordinate delay" made summary judgment improper. *Id.* at 1247. We further explained that the evidence could support a jury finding that the doctor refused to treat or see the inmate after the doctor had an argument with the inmate and said he was "sick of being bothered with him." *Id.* at 1247–48 (alterations adopted).

Relying on *Farrow*, Collins points to the fact that at the August 1, 2017, appointment Dr. Ferrell allegedly told him that he had grown "tired of hearing about all this pain nonsense," thereby demonstrating personal frustration and animus. Collins also claims that Dr. Ferrell snatched the cane from him, commanded him back to his room, and laughed at him when he requested an explanation, all of which supports an inference of animus. But even assuming that after our recent en banc decision in *Wade* this would be enough to create a fact dispute as to Dr. Ferrell's state of mind, Collins's claim still fails because Dr. Ferrell did not act unreasonably.

Unlike the inmate in *Farrow*, there is no evidence that Collins faced a significant delay in receiving medical treatment.

Collins received two surgeries to repair his left knee, benefitted from mobility aids for nearly two months, and regularly consulted either Dr. Ferrell or Dr. Winchell about his knee. Collins continued to regularly receive medical treatment between his first and second knee surgery. After Collins reinjured his knee in August 2017, Collins received immediate treatment from Dr. Ferrell, a consultation with Dr. Winchell, and restoration of his mobility aids. Collins also participated in physical therapy. Even assuming that Dr. Ferrell was aware he was subjecting Collins to some risk by taking the cane, this does not create a jury issue on deliberate indifference because a doctor is permitted to weigh the relative risks and benefits of a course of action and is not deliberately indifferent for failing to eliminate any risk of reinjury. *Farmer*, 511 U.S. at 845 ("Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."). Pretermitting his allegedly poor bedside manner during the August 1, 2017, appointment, Dr. Ferrell's actions, judged in the context of his entire treatment plan, were reasonable. Although the medical treatment provided to Collins may not have been perfect, it was not equivalent to no treatment at all. *But cf. Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (explaining that "[g]rossly incompetent or inadequate" medical care may amount to deliberate indifference); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 702, 704 (11th Cir. 1985) (holding that inmate's allegations that he was provided insufficient medical treatment where he suffered from a variety of serious medical symptoms, complained about

those symptoms, but the prison staff did little or nothing to evaluate his medical needs were sufficient to state a claim that defendants were deliberately indifferent to the inmate's serious medical needs). For these reasons, the district court did not err in granting summary judgment on Collins's claim that Dr. Ferrell was deliberately indifferent to his need for mobility aids.

Second, Collins challenges Dr. Ferrell's decision not to prescribe Tylenol #3 as demonstrating deliberate indifference to his pain. Collins relies heavily on our decision in *McElligott v. Foley*, 182 F.3d 1248, 1252, 1252–54 (11th Cir. 1999), where an inmate suffering chronic, severe abdominal pain for months from what was later discovered to be colon cancer, was given cursory examination and prescribed a liquid diet, Tylenol, pepto-bismol, and an anti-gas medication to treat his pain. We held that a reasonable jury could find that the doctor was deliberately indifferent to the inmate's pain and suffering because the doctor failed to diagnose and treat the inmate's worsening condition. *Id.* at 1258.

While we are not unsympathetic to Collins's chronic knee pain, this case is a far cry from a doctor providing cursory examinations and over-the-counter medication for severe pain. Dr. Ferrell developed a treatment plan that included referrals to an orthopedist and pain management clinic, both prescription and non-prescription pain medication that was monitored and adjusted according to Collins's present circumstances, knee injections, physical therapy, a TENS unit, and education on the importance of

activity and rest, ice, compression, and elevation methods of treatment. Furthermore, immediately after both knee surgeries, Dr. Ferrell prescribed Tylenol #3, which demonstrates that he did prescribe it when he thought it was medically appropriate to do so. Given the stark contrast between the lack of treatment provided to the inmate in *McElligott* and Dr. Ferrell's consistent treatment of Collins's pain, we find that *McElligott* is inapposite.

Instead, we rely on our decision in *Adams v. Poag*, 61 F.3d 1537 (11th Cir. 1995). There we held that a physician assistant's failure to prescribe an inmate stronger medication pending the arrival of an ambulance to transport the inmate to an outpatient clinic was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983." *Id.* at 1547. Collins argues that *Adams* is not on point because the physician there administered successful treatment whereas Dr. Ferrell discontinued effective treatment. However, nothing in our analysis supports the distinction Collins wants us to draw. Similar to *Adams*, the issue here is whether Dr. Ferrell should have prescribed the Tylenol #3 that Collins desired. And as in *Adams*, we find that Dr. Ferrell's decision not to prescribe Tylenol #3 was a reasonable medical judgment that cannot form the basis for liability.

Lastly, Dr. Ferrell's decision to deviate from Dr. Winchell's pain medication recommendations does not support Collins's deliberate indifference to medical needs claim. As an initial matter, Dr. Winchell often noted that he was making a recommendation, but that Dr. Ferrell would make the final determination on how to

manage Collins's pain. Although Collins preferred Dr. Winchell's recommendations, the Eighth Amendment does not require Dr. Ferrell to abandon his own medical judgment in favor of that of another doctor's. *Waldrop*, 871 F.2d at 1033 ("[A] simple difference in medical opinion" does not constitute deliberate indifference.). The district court properly granted summary judgment for Dr. Ferrell on Collins's claim of deliberate indifference for not prescribing Tylenol #3.

## Conclusion

For the reasons above, we find no error in the district court's order granting summary judgment on the deliberate indifference claims against Dr. Ferrell.

**AFFIRMED**.